The Chancellor.
I will first inquire whether the usury, in the manner and form in which it is set up in either of the answers, is sustained without the testimony of Wire. The answer of Marsh and Willis charges the usury thus : that before the making of the mortgage, and about in March, 1841, Wire applied to the complainant to lend him $2000, and that it was then corruptly agreed, -by and between the complainant and Wire,' that the complainant should lend Wire $2000 and should give day for payment till April 1843 ; and that Wire, for the loan of the said $2000 and the giving day as aforesaid, should give and pay the complainant, before receiving the whole of the $2000, a wagon of the value of $100; also, that Wire should pay the complainant interest on the said sum so agreed to be loaned, at six per cent., from the said 1st of April, 18413 until the time of payment thereof as aforesaid; and that, to secure the repayment of the $2000, with interest, Wire should give his bond for Seo., and secure it by his mortgage &c.; and that, in pursuance of the said corrupt agreement, the complainant lent Wire various sums, at different times, in all amounting to $2000 ; and that, before the whole $2000 was lent and advanced, Wire, in pursuance of the said corrupt agreement, paid to the complain *79 ant, and the complainant received from him, a wagon of the value of $100 for the loan of the said sum of $2000 ; and that, for securing the repayment of the said sum on the 1st of April, 1843, with interest, Wire, in further pursuance of the said corrupt agreement, on the 1st of April, 1841, gave his bond and mortgage &c ; which are the same bond and mortgage set forth in the complainant’s bill. The charge is shortly this, that it was corruptly agreed, that Cummins should lend Wire $2000 on interest, and that Wire, for the loan, should give Cummins,, before receving all the money, a wagon of the value of $100, over and above the legal interest; and that, to secure the repayment of the $2000, with legal interest, Wire should give his bond and mortgage ; that in pursuance of the agreement, Cummins lent the $2000, in various sums, at different times, and that, before the whole was advanced, Wire gave, and the complainant received the wagon; and that, to secure the repayment of the $2000, with interest, Wire gave his bond and mortgage.
That a wagon, of the. value of $100, was delivered by Wire at Cummins’s residence, is proved by several witnesses.
James Frashe says, that Cummins and Wire came to Wire’s carriage shop, not far from the 1st of April, 1841, and looked at the bodies and the gearing. That after Cummins left, Wire shewed him a body and gearing to be finished for Cummins. That it was finished that spring, and that he, the witness, by Wire’s direction, delivered it to Cummins, at his residence. That it was delivered about six weeks after Cummins was at the carriage shop as before stated.
Simeon A. Cummins, a son of the complainant, sworn on the part of the complainant, proves the delivery of the wagon; and that it was delivered by Frashe. Ho thinks it was delivered the last of July or first of August.
An effort has been made on the part of the complainant, to show that the wagon was not received by him. I forbear making any particular remarks as to this effort; it is, perhaps, sufficient for me to say that it should not receive the favor of the court. It must be taken as a fact in the cause that the wagon was received by the complainant.
On what account was it delivered by Wire and received by the *80 complainant 1 The complainant, in a special replication put in by him, under oath, a novel proceeding at this day, admits that, •Wire did offer him a carriage, after he had so loaned him the said $2000, as aforesaid; 'but which, he says, he absolutely refused to receive and never did receive. Having reached the conclusion that this wagon was received by Cummins, this sentence-is sufficient to show that it was received in consideration of this loan.
What was the amount of the loan 1 The evidence, exclusive of Wire’s testimony, shows that the amount of the loan was. $2000. We have, then, a loan of $2000, secured by the bond, and mortgage, to be paid with interest, and the delivery by Wire and the reception by Cummins of a wagon, of the value of $100,, in consideration of the loan.
When was the wagon delivered, in reference to the time when the money was advanced 1 The answer says it was delivered before all the $2000 was advanced. The special replication admits that Wire did offer him a carriage after he had so loaned him the said $'2000, as aforesaid. These words “so” and “aforesaid,” refer to the statement of the loan previously made in the said replication. The statement is thus; he admits he did. lend Wire, at different times, before and at the time of the execution of the bond and mortgage, various sums of money, and in notes and obligations against good and solvent men, in all amounting to $2000. Wire’s receipt of April 2, 1841, exhibited by the complainant, shows that Wire received from Cummins-
cash, $108148,.
Christian Schmuck’s note for 83 22,.
George Mitchell’s note for 60 00,
Samuel Bell’s note for 6 30,
and Cummins’s own note for 820 00.
We have no testimony as to the precise time when this note off Cummins for $820 was paid.
Jacob A. Hays, a witness .sworn for the complainant, says, he had the large note, (that is Cummins’s note to Wire,) in Ms possession ; he thinks it was for about $800. Wire sent Mm to-collect money, and gave Mm this note against Cummins, among others ; that he called on Cummins, and that, in a day or two,. *81 Cummins came up to Warrenville, and saw Wire; and he thinks they then talked about this note. He says that, as far as he recollects, this was before the wagon was got and before this note was paid.
This is all we have in testimony as to whether the wagon was delivered before this note was paid. But when the complainant, in order to meet another view of the case, and to show that the whole amount of the $2000 was lent on the 1st of April, 1841, is driven to produce a receipt of Wire which shows that he, Cummins, gave Wire his note for $820 of it, and does not show when this note was payable, or when the $820 was paid; and when it is shown that Wire sent a man with this note to Cummins to get the money for it, and that he did not pay it to the messenger, but in a day or two afterwards went up to see Wire that shortly after the 1st of April a body and gearing were directed to be finished for Cummins, and that it was delivered, as some of the testimony shows, within six weeks thereafter, other testimony putting it a month or two later; I think it would be asking too much to ask the court to permit these securities to stand because there is a want of precise proof that the wagon was delivered before all the money was advanced. If it was not, there would be very little of substance in the variance; for, whether the wagon was delivered a few days before or a few days after the whole money was advanced, is, substantially of no importance. And though courts have been astute in defeating the defence of usury; I think quite enough so; yet I believe no case can be found in which a complainant, who, by his own proof, shows that he did not advance all the money when the securities were taken, but gave his own note for four-tenths of it, and does not show when that note was payable, nor when paid, and who is shown by testimony to have received a wagon, of the value of $100, in consideration of the loan, beyond the interest, and within some short time after the date of the securities, has been permitted to sustain them on the ground that the proof is not precise that he received the wagon before he paid all the money. If he felt driven to this ground, he had it in his power to give proof in opposition to the facts and circumstances proved affording a *82 fair presumption that the money was not all paid till after the wagon was delivered.
The testimony of Dennis and of Barton and Drake cannot be overlooked, in considering whether the defence made by this answer is made out. Dennis says the complainant told him he had let Wire have the money, and that he understood the complainant to say he.got something for it, he cant say whether $100 or $200.
Barton swears that in May or June, 1841, Cummins called at his house and asked to see the law in regard to usury; and said he had loaned Wire some money, and that people said he had taken usury, and that Wire would swear him out of it; that he, Barton, read to Cummins the section concerning usury, and that Cummins then said, “If Wire saw fit to make him a present, what business was it to any body,” or words to that effect.
Jacob Drake, sworn for the complainant, on his cross-examination, after an evasive answer or two, says he thinks the complainant told him that Wire had givegi or offered him something like $100, for the sake of getting some money; but that he would not ask it of him the way things turned out.
There is but one other question remaining to be considered for the purpose of determining whether the defence set up by this answer is made out, excluding the testimony of Wire. The answer charges a previous corrupt agreement to give and receive the wagon. That the loan agreed for was $2000; that a wagon, of the value of $100 was given by Wire, and received by Cummins, in consideration of the loan; I cannot doubt. That the wagon was delivered before all the money was advanced, (if it be at all necessary that such prior delivery should be proved,) must, I think, under the evidence in the cause, be considered as proved. Was the wagon delivered and received on a corrupt agreement made between the parties at the time of or previous to the loan 1 On this part of the case, I think the doctrine sanctioned by our Supreme Court, in 2 Har. 497, and 3 Har. 325, that the payment and receipt of usurious interest is prima facie evidence of a prior usurious contract, is the true doctrine. If this be not so, the statute against usury might as well be struck from the statute book. If courts are to permit themselves to be *83 blinded by a pretence that what was given, for a loan, beyond legal interest, was a present made by the borrower to the lender, after the money was lent, without any agreement or stipulation therefor before, the law against usury is little better than a dead letter.
I am of opinion that the usury as set up in the answer of Marsh and Willis is proved, excluding the testimony of Wire.
Assuming, for the present, that Wire’s testimony is admissible, we will next examine whether the usury, in the manner and form in which it is set out in the answer of Magie and Sander-son, is proved. This answer states, that before the making of the mortgage, and about in March, 1841, Wire applied to Cummins for the loan of $2000, and that it was then corruptly agreed between them that Cummins should lend Wire $1900 and give day &c., till April 1, 1848; and that Wire, for the loan of said $1900 and the giving day as aforesaid, should pay Cummins interest on the $1900 and on the $100, at 6 per cent., from April 1, 1841, till the time of payment thereof; and that, to secure the $1900 and the $100, with the interest thereon, Wire should give the bond and mortgage. That, in pursuance of the said corrupt agreement, Cummins lent Wire various sums, at different times, amounting in all to $1900 ; that to secure the repayment thereof and interest thereon, on the 1st April, 1843, and the payment of the $100 to be paid by Wire to Cummins, in consideration of the said loan, with the interest thereon, on the same 1st April, 1843, Wire, in further pursuance of the said corrupt agreement, on or about April 1,1841, gave his bond and mortgage &c.
The answer is, substantially, shortly this : — that Wire agreed to borrow and Cummins agreed to lend $1900, and that, for the loan, Wire agreed to give, and Cummins agreed to receive Wire’s bond and mortgage for $2000 with interest thereon; and that the loan was made and the securities given according to the agreement.
Wire testifies that when he first applied for the money, he proposed to Cummins if he would raise him $1900, by or about the 1st of April, he, Wire, would give Cummins his bond and mortgage for $2000; that the sum agreed upon was $1900; and *84 Cummins said he would try and raise the money ; and that Cummins did raise for him, in money, together with Cummins’s note, $1900, on or about April 1, 1841; and for which, he, Wire, gave his bond and mortgage, the mortgage being executed by his wife also, for $2000, with interest thereon. That he received but $1900.
There can be no doubt that this proof sustains the defence set up in the answer of Magie and Sanderson ; and this proof is entirely consistent with, and is corroborated by the other evidence in the cause, aside from that which relates to the wagon; and the whole testimony of Wire, ineluding.his statement of the transaction in relation to the wagon, is entirely consistent with all the other testimony in the cause, in reference to the usury. And here I may be permitted to advert again to the complainant’s special replication. I think it is well calculatéd to show how very hard is the way of the transgressor; and to impress upon us the truth that if shallow devices are to be permitted to succeed in overcoming the defence of usury, great elasticity of conscience, and great injury to the cause of morals will be the rerult. In the first part of the replication he resorts to a literal denial, (an improper mode of answering,) or rather an attempt at a literal denial; for he fails even in this before he gets through. He denies that before making of the bond and mortgage, and about in March, 1841, Wire applied -to him for the loan of $2000, or some other sum, and that it was then corruptly agreed between them that he should lend and advance Wire $1900, and that he should give day &c. to Wire, till April 1, 1848, and that Wire, for the loan of the said $1900 and the giving day as aforesaid, should give and pay to him $100 ; also that Wire should pay him interest on the said $1900 at six per cent., and should also pay interest at the same rate on the said sum of $100 so agreed to be given and paid by Wire to him, from the 1st of April, 1841, until the time of the payment thereof; that in order to secure to him the repayment of the said $1900 agreed to be paid as aforesaid, to him by Wire, with the interest thereon, it was further agreed that Wire should make and deliver to him the bond of Wire for $2000, and the mortgage &c. Now, this denial is all in one connected clause, the different parts of which *85 are connected by copulatives ; and if his denial is true as to any one part it is true as to the whole.
This answer charges a part of the agreement to have been that, in order to secure to Cummins the repayment of the $1900 and the payment of the $100, Wire should give his bond and mortgage for $2000.
The denial is thus : — he denies that in order to secure the repayment of the $1900, it was agreed that Wire should give his bond and mortgage for $2000. All this replication amounts to nothing and a little less.
But the parts of the replication to which the remarks above made in relation to it particularly referred, is the next succeeding clause of it; it is as follows : — Ho admits that he did lend and advance to Wire at different times, before and at the time of executing the bond and mortgage, various sums of money, and in notes and obligations against good and solvent men, in all amounting to $2000, and not to $1900 only, as charged in the answer of Magie and Sandford. This is evidently a well studied sentence; and I am very clear that the complainant would be unwilling to have it considered as an oath that, before and at the time of the execution of the bond and mortgage, he lent and advanced, at various times, in money and notes and obligations $2000. It is evident that the sentence was framed in view of the fact testified to by Wire, that some two or three weeks after the bond and mortgage was delivered, Cummins came to him and said he was dissatisfied about the bond and mortgage, and gave Mm $100 in notes of other persons, to make up the $2000. Hence the sentence is, that he did lend and advance, at different times, before and at the time of executing the bond and mortgage, various sums of money, and (did lend and advance) in notes &c., (without saying when, or how much,) in all amounting to $2000.
The next half of this paragraph is of the same character. It denies that before the whole sum of $2000 was lent and advanced, that is before he made up the additional $100 as aforesaid, he agreed to receive or Wire agreed to pay $100, or any other sum of money, for the loan, or forbearance of payment of the Said sum of $2000.
*86 Now this is not the charge. The charge is that, before the $1900 was advanced, Wire agreed to pay and he agreed to receive $100 for the loan and forbearance of payment of $1900.
He closes his replication by saying he admits that Wire did offer him a carriage, after he had so loaned to Wire the said sum of $2000, as aforesaid, but which, he says, he absolutely refused to receive and never did receive.
I have disposed of this part of his statement before, and have shown that, under the testimony in the cause, he did receive it. His conscience, perhaps, was satisfied, so as to allow him to say he did not receive it, by the fact that his son Nelson took the horse from before the wagon and put the wagon into the wagon house, and the wagon was called Nelson’s. But did the father or the son ever pay any thing for it ? This device is puerile. He received the wagon.
The case, then, as it stood when the bond and mortgage were executed, is clearly proved as set up in defence by the answer of Magie and Sandford. It was a loan of $1900, and the taking, therefor, a bond and mortgage for $2000, and interest thereon. This is clearly usurious.
But it was said in argument, that Cummins afterwards repented, and went to Wire and gave him notes of other persons to the amount of $100, and this made up the loan to the $2000. If it was not for the wagon affair, I should be called upon to consider the case in view of the decisions which were produced on the argument on this subject of penitence. But, at least,- a court should be satisfied that the repentance was sincere, and sincerely acted upon. A mere change from $100 in money to a wagon of the value of $100 is not proof of repentance. The case, then, stands on its first ground, the ground on which it stood when the bond and mortgage were delivered; and if Wire’s testimony is admissible, the defence, in the manner and form in which it is set up in the answer of Magie and Sanderson, is made out. If Wire’s testimony is not admissible, then the defence, in the manner and form in which it is set up in the answer of Marsh and Willis, is made out.
It appears to me that Wire’s testimony is admissible. This is a proceeding in rem. The costs will be paid from the pro *87 ceeds of the sale of the property, if the complainant succeeds; there would be no decree against Wire for costs. That he is a defendant in the suit is no objection to his being sworn, if he is not interested in the event of it, and interested on the side of the party calling him. Is he interested, and, if so, on which side ? Is he interested to defeat the mortgage ? Not unless the decree against the mortgage which might be procured by his testimony could avail him in an action against him on the bond. But it could not. If interested at all, then, is it not to sustain the mortgage, that the mortgage debt or a part of it may be paid out of the property. The benefit which has accrued to hi™ from the amount paid by the purchasers of the equity of redemption would remain the same.
Wire’s testimony being considered admissible, can it be held that both answers are sustained? It may be said that if the agreement was, to take a bond and mortgage for $2000 and interest thereon, on advancing $1900, which is the agreement as set forth in the answer of Magie and Sanderson and proved by Wire, it could not be an agreement to lend $2000 and take a bond and mortgage for that sum, on an agreement between them that Wire should give Cummins a wagon of the value of $100, which is the agreement as set forth in the answer of Marsh and Willis. This would be so if there had been but one agreement, and there had been no substitution of another agreement for it. But where the original agreement as first executed is for securing $100 more than is advanced, and afterwards the lender, (at his own suggestion,) advances the additional $100, and takes a carriage of the value of $100, it must bo considered in the same light as if the original agreement was to lend the $2000 on bond and mortgage and take such carriage for doing it. Both answers are sustained.
The next question is, can these defendants, or either of them, take advantage of the usury? These defendants were made parties defendants as judgment creditors. After the filing of the bill, and before their answers were filed, they became purchasers of the lands at a sale thereof by the sheriff under judgments and executions at law, subject to all prior legal incumbrances.
It was held in De Wolf vs. Johnson, 10 Wheaton 367, that *88 the purchaser of an equity of redemption cannot set up usury in the mortgage; and, on the authority of that case, it was so decided by our Court of Errors in the case of Ward vs. Plume. Afterwards, a case in which I was concerned as counsel, the case of Mathews against Roberts and Ogden, came up before our Court of Errors, and the subsequent case of Lloyd vs. Scott, 4 Peters, 205, 229, was produced, overruling the case of De Wolf vs. Johnson; and our Court of Errors sustained the defence made by the purchaser of the equity of redemption. I am not disposed to question the authority of that'decision. But it was said, in argument, that when the bill was filed, these defendants were only judgment creditors; and that they should not be permitted, after the bill was filed, to put themselves in a better position to make the defence by purchasing the equity of redemption. I do not see that this is a sound position. Nor do I see any reason why a judgment creditor, as such, may not make the defence. He has a lien on the property; and for that reason is made a defendant in a foreclosure suit. He may redeem. Has he not an interest in the land sufficient to authorize him to question the validity of any prior lien. Why is he made a defendant if he cannot question the mortgage *? Cannot a subsequent mortgagee set up usury in the first mortgage 1
In the case of Green vs. Kemp, 13 Mass. 415, Woods, after mortgaging the premises to Green, for $1000, released and guarantied to Kemp all the right in equity of redeeming which he had in the premises, for $100. The court in that case said that Kemp had no title in the'land before redeeming, for he bought only a right to redeem; and therefore he could not be permitted to avoid the mortgage for usury.1 But the court, in the same case, say that if he had bought the land he might avoid a previous usurious mortgage, though he had notice of the mortgage before he purchased.
In this case Magie and Sanderson bought the lands at a sheriff’s sale on a number of executions, including an execution of their own, for $2100, the highest bid, and received the sheriff’s deed therefor in the usual form, subject to all legal prior incumbrance. I am of opinion that such a purchaser can set up usury in a mortgage existing on the premises at the time of the sale. *89 I am of opinion, also, that when a hill is filed to foreclose, and judgment creditors are made parties, and before the time for answering comes, one of the judgment creditors, a defendant in the bill, buys the property at sheriff’s sale under the executions at law, he may, in his character of purchaser, set up usury in the mortgage.
In this view of the case, the bill must be dismissed. It will be dismissed without prejudice to the rights of Amos Kennedy, the subsequent mortgagee mentioned in the bill, whatever those rights may be.
The objection made to the examination of Wire as a witness, on the ground that no order for his examination was signed, cannot be allowed to prevail under the circumstances. A paper purporting to be a certified copy of an order for the examination of Wire, and of the signature of the Chancellor thereto, was sent by the clerk to the solicitor of the defendants; but by some oversight the original order was not presented to the Chancellor for his signature. These orders are very much of course. A party examined as a witness between other parties is examined subject to all exceptions; and he may be objected to at the hearing, if interested, though the objection has not been previously made.
Bill dismissed.