HARRY B. BROCKHURST

*v.*

JOHN H. COX.

[Decided July 12th, 1906.]

1. The "immediate possession" or "immediate recording" essential to
rendering a chattel mortgage valid under the Chattel Mortgage act (*P. L.*
*1902 pp. 487, 488 §§ 4, 5*), requiring an immediate possession by the mort-
gagee or a recording of the mortgage, in default of which the same is void
as against the creditors of the mortgagor, mean as soon as may be by
reasonable dispatch under the circumstances of the case.

2. A chattel mortgage was dated May 2d, and was delivered to the
mortgagee May 3d. It was filed for record May 18th. The mortgagee
could, either by messenger or mail, have easily recorded the mortgage on
the 4th or 5th of May. No attempt at any explanation for the delay was
made.—*Held,* that the mortgage was invalid as against the creditors of
the mortgagor under the Chattel Mortgage act (*P. L. 1902 pp. 487, 488*
*§§ 4, 5*), requiring the recording of mortgages to render them valid as
against creditors of the mortgagor.

3. The Chattel Mortgage act (*P. L. 1902 pp. 487, 488 §§ 4, 5*), pro-
viding that a chattel mortgage, unaccompanied by an immediate delivery
of the chattels mortgaged or recorded, shall be void as against the
creditors of the mortgagor, makes an unrecorded mortgage, unaccom-
panied by immediate delivery to the mortgagee of the chattels mortgaged,

void at least as to creditors of the mortgagor existing at the time of the giving of the mortgage.

4. A creditor, whose debt was subsisting at the time of the giving of a chattel mortgage, may, by subsequently obtaining a judgment and levying on the property mortgaged, place himself in a position to attack the chattel mortgage or to resist its enforcement.

5. A receiver of an insolvent partnership, appointed for the purpose of winding up the affairs of the partnership and distributing its assets to its creditors, is the representative of the partnership creditors, and as such he may, by suit or defence, avoid a chattel mortgage given by the partnership which is void as against the creditors.

Proceedings with respect to the claim of Elizabeth A. Brockhurst.

The bill in this cause was filed on the 5th day of May, 1905, and is the ordinary bill for the dissolution of a partnership and an accounting, together with a prayer for a receiver.

A temporary receiver was appointed, and subsequently, in December, 1905, a decree of dissolution of the partnership was made, a permanent receiver and manager was appointed, and it was decreed that an accounting should be taken and stated between the parties, "that the creditors of the said firm should be ascertained, and the amounts due to each of them."

Among the claims filed with the receiver was one by Elizabeth A. Brockhurst, for the sum of $800, with interest from the 8th day of December, 1904. This claim was secured by a chattel mortgage to her, dated May 2d, 1905.

Some testimony was taken before the receiver sitting as a master, but the case actually was heard before the court as if upon a petition by her as chattel mortgagee to be paid the amount of her chattel mortgage out of the funds in the hands of the receiver.

The funds in the hands of the receiver are slightly in excess of the amount of this mortgage and interest, and are mainly composed of the moneys received upon a sale of the assets of the firm held on the 19th day of May, 1905. The assets are insufficient to pay the debts.

*Mr. Adolf L. Engelke,* for Elizabeth A. Brockhurst.

*Mr. J. Merritt Lane,* receiver, *pro se.*

*Mr. Frank W. Hastings,* for E. D. Depew & Company, a judgment creditor.

*Mr. James E. Pyle,* for the "Evening Journal" Association, a judgment creditor.

GARRISON, V. C. (after stating facts).

Harry B. Brockhurst and John H. Cox entered into a partnership about the 4th of December, 1904, for the purpose of selling dairy products. On the 8th day of December, 1904, Harry B. Brockhurst purchased a quantity of butter, and alleges that, for the purpose of paying for this butter, he borrowed from his mother, Elizabeth A. Brockhurst, the sum of $800. He alleges that this butter was sold and the proceeds therefrom kept by the firm of Brockhurst & Cox.

On the 3d day of May, 1905, Harry B. Brockhurst executed and acknowledged, on behalf of the firm of Brockhurst & Cox, a chattel mortgage, upon practically all of its assets, to Elizabeth A. Brockhurst, to secure the payment of $800 borrowed on the 8th day of December, 1904. On the same day Elizabeth A. Brockhurst makes affidavit to the consideration of this mortgage.

On the 5th day of May, 1905, Harry B. Brockhurst filed his bill in this suit, and a receiver was appointed, who entered into possession of the property. On the 18th day of May, 1905, the mortgage in question was duly recorded in the proper office of Hudson county, New Jersey.

On the 21st day of February, 1906, Edward D. Depew & Company obtained a judgment against the partnership aforesaid for $264.04. On the 23d day of February, 1906, the "Evening Journal" Association obtained a judgment against the partnership for $107.17.

The assets of the firm were sold by the temporary receiver appointed in this suit on the 19th day of May, 1905.

While the proofs concerning the loan by Mrs. Brockhurst to the firm of Brockhurst & Cox lack clearness and create suspicions, I cannot say, after mature deliberation, that there is not

sufficient proof to sustain her claim that she loaned $800 to the firm, for which the chattel mortgage in question was subsequently given.

The receiver denies her right under this chattel mortgage, because he contends that the same is void as to the creditors of the mortgagors, and that he, as such receiver, represents those creditors to such an extent as to enable him to set up their rights as against this mortgagee.

The provisions of the Chattel Mortgage act (*P. L. 1902 p. 487 §§ 4, 5*) have been construed by the courts to require an immediate possession by the mortgagee, or an immediate recording of the mortgage, in default of which the same is absolutely void as against the creditors of the mortgagor. "Immediate possession" or "immediate recording" is held to mean "as soon as may be by reasonable dispatch under the circumstances of the case." *Roe* v. *Meding, 53 N. J. Eq. (8 Dick.) 350 (Court of Errors and Appeals, 1895).* Five days have been held to be too long a delay under the circumstances. *Hardcastle* v. *Stiles, 69 N. J. Law (40 Vr.) 551 (Supreme Court, 1903); affirmed, 70 N. J. Law (41 Vr.) 829.*

The mortgage in the case at bar was dated May 2d, 1905, and was actually delivered to the mortgagee on the 3d of May, 1905, upon which day she made an affidavit, which is endorsed on the mortgage itself. The mortgagee at that time was at Red Bank, Monmouth county, New Jersey, and her sons were each in business in and about Jersey City, and were in constant communication with her. She could, either by messenger or mail, have easily and readily gotten this mortgage to the register's office in Jersey City on the 4th or 5th of May at the outside. The mortgage was not filed for record until the 18th of May, 1905. No attempt at any explanation or reason for this delay is made, and I therefore find that this mortgage was not recorded as required by the statute so as to protect it as against subsisting creditors of the mortgagors.

Under the statute, the effect of not immediately recording the mortgage is to make the same absolutely void as to the creditors of the mortgagor. There has been considerable discussion as to

the meaning of these words, and various reasons have been suggested for the different interpretations placed thereon.

By reason of the ninth section of the act, as construed in *Roe v. Meding, supra,* those who become creditors after the recording are deprived of the right of attacking the mortgage. But with respect to the fourth section it has been suggested, and is argued in this case at bar, that the statute only applies to those creditors who became such after the time of giving the mortgage and before possession is taken or record of the mortgage is made. The argument is that such creditors are the only ones who are injured by the failure to take possession or to record the mortgage.

Laying aside, for the moment, the obvious answer that the legislature did not, by any language used by it, specify any restricted class, but used general language, inclusive of all creditors, I cannot agree with the reasoning which results in such interpretation. It is, of course, true that by leaving the mortgagor as the apparent owner of unencumbered chattels injury is done to those who trust him upon such apparent ownership. It is nevertheless true that injury accrues to creditors whose debts are in existence prior to the giving of the mortgage. Such creditors may delay taking either legal or other means at their command to collect their debts so long as no one apparently has any preference to them and all of the creditors of the common debtor are on the same plane.

By permitting secret preferences to be given by chattel mortgages not recorded, other creditors would be lulled into security, and would be likely to refrain from pressing the debtor at law or otherwise, to the great benefit of the debtor and the preferred creditor, but to the serious injury, in many cases, of the unsecured creditor.

But, as I have suggested above, I do not see that the court is called upon to determine what influenced the legislature in protecting a class, the duty of the court being to determine merely what class is protected.

The language of the statute is clear. The mortgage unrecorded is absolutely void as to the creditors of the mortgagor. This certainly must mean the creditors of the mortgagor exist-

ing at the time that the mortgage was given, whatever else of a more inclusive character it may also mean.

Since all of the creditors in the case at bar were such at the time of the giving of the mortgage, it is not necessary in this case to go further than I have just done in the matter of construction. That the construction I have placed upon this act is justified by the authorities will be found by consulting the following: *Bank of Metropolis* v. *Sprague,* 21 *N. J. Eq.* (6 *C. E. Gr.*) 530 (*Court of Errors and Appeals, 1870*); *Williamson* v. *Railroad Company,* 29 *N. J. Eq.* (2 *Stew.*) 336 (*Court of Errors and Appeals, 1878*); *Roe* v. *Meding,* 53 *N. J. Eq.* (8 *Dick.*) 350 (*Court of Errors and Appeals, 1895*).

A creditor whose debt was subsisting at the time of the giving of a chattel mortgage may, by subsequently obtaining judgment and levying upon the property, place himself in a position to attack the chattel mortgage or to resist its enforcement. But this is not the only way in which the right of a creditor to attack the validity of the chattel mortgage or to resist its enforcement may be asserted. It has been held that such right may be asserted by a receiver appointed in pursuance of the General Corporation act. *Graham Button Co.* v. *Spielmann, 50 N. J. Eq.* (5 *Dick.*) 120 (*Vice-Chancellor Van Fleet, 1892*); *affirmed, 50 N. J. Eq.* (5 *Dick.*) 796.

On the other hand, it has been held that a general assignee by a voluntary assignment is not such a representative of creditors as to enable him to assert, on their behalf, this right of attacking the validity of an otherwise valid chattel mortgage. *Wimpfheimer* v. *Perrine, 67 N. J. Eq.* (1 *Robb.*) 597 (*Court of Errors and Appeals, 1904*).

The real question for decision in this case, therefore, is, Does a receiver of a partnership, who is appointed after a decree of dissolution for the purpose of winding up its affairs and distributing the money to its creditors, so far represent such creditors as to be invested with power in their behalf to attack the validity or to resist the enforcement of a chattel mortgage given by the partners?

From the proofs in this suit it appears that this partnership is insolvent. Before a decree of dissolution the receiver ap-

pointed pending the suit is nothing more than a custodian of the property, and represents nobody excepting the court, and represents it solely for the purpose of conserving the property until the further order of the court. The court, having taken the property in charge solely for the purpose of conservation, has not, by that act, attempted to adjudicate any claims nor to settle any rights. The suit may be discontinued, or in any one of a number of ways it may result in some disposition other than a final decree of dissolution, the effect of which would be to revest the partnership with its property.

After a decree of dissolution, however, the situation is entirely changed. The court, by such decree, determines that the partnership is dissolved; that its property must first go to pay the creditors of the partnership, and that such creditors will be ascertained by the court, their rights passed upon, and their debts, to the extent that the property will go toward that end, paid.

Under such circumstances it appears to me that the correct holding is that from the time of the decree of dissolution there is, by virtue thereof, fastened upon the assets of the company a lien in favor of subsisting creditors. The receiver appointed in such final decree of dissolution becomes the representative of the creditors, and as such may, by suit or defence, avoid any instrument which is void as against them.

After the decree of dissolution the distribution of the property of the partnership among the creditors is an involuntary proceeding. In *Wimpfheimer* v. *Perrine, supra,* Mr. Justice Van Syckel (at *p. 600*) says: "In an involuntary proceeding, as in the case of a receivership, or assignee appointed by the court, the proceeding is adverse to the debtor. The law takes the property in the position in which it is with reference to the rights of creditors and appropriates it exclusively and irrevocably to the payment of debts. Anyone claiming a superior right must show his title *stricti juris*. The receiver is the embodiment of creditors. He stands as and for them. When he challenges the validity of the mortgage, he does so in the character of creditor, having, in virtue of his receivership debts, fastened upon the mortgagor's property. It is then a question

strictly between creditors and the mortgagee, and the statute, declaring the mortgage void as to creditors for want of recording, applies as fully as if it was a suit between a single judgment creditor and the mortgagee."

The effect of the decree of dissolution and the settlement of the affairs of the partnership through the court has been held to be, so far as creditors are concerned, analogous to a creditor's bill, and the debts existing are held to be fastened on the assets. *Ross* v. *Titsworth, 37 N. J. Eq. (10 Stew.) 337 (Chancellor Runyon, 1883)*; *Kirkpatrick* v. *McElroy, 41 N. J. Eq. (14 Stew.) 539 (Court of Errors and Appeals, 1886)*; *Smith* v. *Crater, 43 N. J. Eq. (16 Stew.) 641 (Court of Errors and Appeals, 1887)*; *Van Alstyne* v. *Cook, 25 N. Y. 495.*

Since the court will not permit the creditors of the partnership to enforce their rights as against the property in the possession of the receiver (*Ross* v. *Titsworth, supra*), it would seem that after dissolution it must necessarily be held that the receiver represents the rights of all of the creditors whose debts have thus become fastened upon the property. *Lawson* v. *Dunn, 66 N. J. Eq. (21 Dick.) 90 (Vice-Chancellor Reed, 1900)*. To hold otherwise would be clearly inequitable. It would prevent the creditors from protecting themselves without extending to them a substitute for the rights thus taken away from them.

I therefore conclude that the receiver of this insolvent partnership, after the decree of dissolution, became vested with the rights of the creditors to such an extent as to enable him to resist the enforcement of this chattel mortgage, and that he has successfully done so by showing that the same was not immediately recorded under the circumstances of the case.

The result is that Elizabeth A. Brockhurst, the claimant, will not be given the benefit of the chattel mortgage as a preference, but will be considered as a general creditor of the partnership for the sum of $800 and interest.

This finding makes it unnecessary to determine the question raised by two of the creditors of the insolvent firm who obtained judgments after the decree of dissolution, and who proved their judgments in this proceeding. Since I have held that the receiver represents all the creditors, and since, by obtaining these

judgments, they can get no preference, there is no necessity to make any finding concerning their claims in this suit.

I will advise a decree in accordance with the views above expressed.