Complainant files its bill as a purchaser of mortgaged chattels "in good faith" under the statute R.S. 46:28-5 regulating *Page 435 
the execution and registry of chattel mortgages, and seeks to enjoin a sale thereof by the defendant Edward H. Martin, bailiff of the defendant mortgagee Corn Exchange National Bank and Trust Company. Complainant asserts that the two mortgages in question were not immediately recorded, that the jurats of the affidavits of consideration were incomplete, and that the affidavits did not define the authority of the affiant. Complainant prays a decree declaring that, as to it, the mortgages are void.
The defendant Corn Exchange National Bank and Trust Company insists that its mortgages, notwithstanding complainant's challenge, are valid and enforceable liens. It also stresses the fact that complainant prosecutes this suit as a "subsequent purchaser" of the mortgaged chattels, and charges that it is not such "in good faith" because the mortgages were of record in the proper public office when the complainant made its purchase. Therefore, before consideration is given to the question of compliance or non-compliance by the mortgagee with the statute in the drafting, execution and recording of its mortgages, the status of the complainant to contest their validity should be examined and determined.
Certain important facts were established by the evidence and stand unquestioned by the complainant: The challenged mortgages were given to secure cash loans aggregating $4,300; payments were made by the mortgagor on account of these loans and the principal sum due had been reduced to $2,772.04 at the time this suit was instituted; the mortgages were of record in the proper public office when complainant purchased the mortgaged chattels; complainant was a complete stranger to the series of occurrences which began with the making of the loans and eventuated in the sale of the mortgaged chattels to Leonard L. Zeidman by the trustee in bankruptcy of the mortgagor, their resale to The Credit Corporation of America, and their transfer to Aeronautical Tools Corporation; neither the purchaser of the mortgaged goods from the trustee nor the complainant was a creditor of the mortgagor, and the two intermediate purchasers were not creditors; the chattels mortgaged were in the manufacturing plant of the mortgagor when the mortgages were executed and they remained at the *Page 436 
same location until they were seized and advertised for sale by the defendant bailiff; and, when the mortgaged chattels were sold by the trustee they were transferred subject to the two chattel mortgages of the defendant bank.
The mortgagor was Aeronautical Manufacturing Company, Inc., a company engaged in war work. The chattels mortgaged consisted of four motor-driven lathes, a drilling machine, a diamond-surfaced power grinder, two shaping saws, and their motors and accessories. The two mortgages were dated May 11th, 1943, and May 28th, 1943, and were recorded June 2d 1943, and June 10th, 1943, respectively. The mortgaged machines and equipment were but eight items out of many hundred sold by the trustee in bankruptcy to Mr. Zeidman. That sale and the three subsequent sales included all of the furniture and furnishings in the executive and administrative offices and the payroll and drafting rooms of the bankrupt company, and a great number of machines, dies, tools, stock and equipment in its plant. For all these articles, many of them almost impossible to obtain in a wartime market, Mr. Zeidman paid $20,000.
Subsequent to the execution of the two challenged mortgages, the mortgagor became financially involved and ultimately insolvent. Certain of its creditors applied to this court and apendente lite receiver was appointed. Other creditors then instituted bankruptcy proceedings and the scene shifted to the United States District Court for the District of New Jersey. There, Frederick Cohen was appointed trustee.
The trustee in bankruptcy sold and transferred the mortgaged machinery and equipment and the other chattels to Leonard L. Zeidman January 26th, 1944. On the same day Mr. Zeidman transferred them to The Credit Corporation of America and it transferred them to Aeronautical Tools Corporation. October 20th, 1944, Aeronautical Tools Corporation sold and transferred the mortgaged chattels and the other personalty to Osco Motors Corporation, the complainant.
Was the complainant, when it purchased the mortgaged chattels, a "subsequent purchaser" "in good faith" within the intendment of the cited act? The words "good faith," as employed in the statute, have been construed by this court *Page 437 
as synonymous with the words "without notice." It is quite evident, nevertheless, that in choosing and employing those words the legislature intended to express more than mere lack of notice. The words were undoubtedly chosen and employed with intent to protect only the subsequent purchaser who bought without knowledge of circumstances sufficient to put a prudent man upon inquiry regarding particular facts, which inquiry would have lead to the discovery that the chattels had been mortgaged.Hoag v. Sayre (Court of Errors and Appeals), 33 N.J. Eq. 552.
When purchased by the complainant, the mortgaged machinery and equipment still stood in the manufacturing plant of the defunct mortgagor and the plant was being operated by or was in the control of the trustee in bankruptcy. Mr. Zeidman, who purchased the mortgaged chattels from the trustee subject to the two mortgages, was the vice-president of Aeronautical Tools Corporation, complainant's assignor, and the officer who signed the bill of sale to complainant. Assuredly, complainant did not purchase this machinery and equipment in the plant of a bankrupt concern without inquiring of Mr. Zeidman as to whether it was free from lien or encumbrance. Surely, complainant knew that Aeronautical Manufacturing Company, Inc., was in bankruptcy. If complainant was not informed of the situation by Mr. Zeidman, a mere examination of the bankruptcy proceedings in the office of the Camden referee would have disclosed the existence of the mortgages, their recordation, and the sale by the trustee to Mr. Zeidman subject thereto.
It is the established law of this state that a "subsequent purchaser," to be put in a position where he may take advantage of the failure of a prior mortgagee to comply with the terms of the statute, must have made his purchase without actual or constructive notice of such prior mortgage. Graham Button Co.
v. Spielman (Court of Chancery), 50 N.J. Eq. 120;24 Atl. Rep. 571; affirmed, 50 N.J. Eq. 796; 27 Atl. Rep. 1032; Higgins
v. Schmidt (Court of Chancery), 115 N.J. Eq. 64;169 Atl. Rep. 522. Complainant had constructive, if not actual, notice of the two mortgages. But, complainant contends, it has the right to attack the mortgages *Page 438 
by reason of the fact that Mr. Zeidman, in placing his offer to buy with the trustee in bankruptcy, reserved to himself that right.
The Zeidman purchase occurred in this fashion: January 6th, 1944, he made a written offer to the trustee to purchase these chattels; his letter contained this paragraph:
"I make this offer subject to all of the outstanding claims by reason of sundry chattel mortgages and conditional sales agreements (including the chattel mortgage given by the bankrupt to Commercial Credit Company, Inc., recorded April 24, 1943, in Chattel Mortgage Book 76, page 238, etc., of Camden County) enumerated in the petition filed by yourself as Receiver on December 13, 1943 in the above matter, reserving to myself thesame rights as the Trustee may have had to contest the saidchattel mortgages and conditional sales agreements, or any of them, only in so far as the several holders of the said liens are concerned and not as to the Trustee or the funds in the hands of the Trustee." (Italics supplied.)
Upon receipt of Mr. Zeidman's letter, the trustee in bankruptcy applied to the referee and on January 19th, 1944, a meeting of the creditors of the bankrupt was held. They rejected the offer. Subsequently Mr. Zeidman submitted a revised bid. That offer is not before me in written form, but the trustee says in his supplemental petition that it embodied "all the terms and conditions of Zeidman's offer as stated in his letter of January 6th, 1944," c. A second meeting of creditors was held January 26th, 1944, and they approved of the proposed sale. The referee then inquired if anyone present wished to make a better offer; there was no response and the referee ordered that the Zeidman offer, as revised, be accepted. By order, the referee authorized the trustee "to deliver possession of the tangible, physical assets covered by said offer to the said Leonard L. Zeidman, upon payment by said Zeidman of the purchase price, and to execute and deliver to the said Zeidman a bill of sale for said assets in accordance with the terms and conditions of said offer." Thereupon, the trustee in bankruptcy executed and delivered a bill of sale to Mr. Zeidman. This title instrument described the subject-matter of the transfer as: "all goods, chattels and articles of personal property belonging to and constituting assets of the estate of said bankrupt, as set forth in`trustee's *Page 439 petition for leave to sell certain assets subject to liens ofchattel mortgages, etc.' and `trustee's amended andsupplemental petition for leave to sell certain assets subject tothe liens of chattel mortgages, etc.' heretofore filed with the referee in charge of said bankruptcy proceeding and remaining on file in his office, * * *."
The sale to Mr. Zeidman was obviously not a "public sale" as we commonly use that term, and one is immediately conscious of the possibility that complainant, if it has the legal right to challenge the chattel mortgages and is successful in its attack, may take value which should have been resolved into money and distributed among the creditors of the bankrupt. No evidence was offered to prove that the creditors of the bankrupt obtained full value for the articles sold, and there was no disclosure of the true consideration passing in the three subsequent transfers. The very insistence of Mr. Zeidman upon his attempted reservation of the right of the trustee to contest the chattel mortgages would seem to indicate that he believed he had information of value with respect to the mortgages and that he intended to advantage himself of it. The United States Circuit Court of Appeals for the Tenth Circuit, in Webster v. Barnes Banking Co. (July 24th, 1940), 113 Fed. Rep. 2d 1003, declared that a comparable sale "was wholly illusory."
In the Webster Case the court, citing Neuberger v. Felis,203 Ala. 142; 82 So. Rep. 172; 43 A.B.R. 703, said: "It has been held that the right of a trustee in bankruptcy to set aside a conveyance made in fraud of creditors vests in the trustee for the benefit of the creditors and is not assignable." It added: "Under the authorities, there is grave doubt that the trustee could sell his right to set aside the fraudulent conveyance." In an earlier case, In re Downing (December 9th, 1912),201 Fed. Rep. 93, the Seventh Circuit Court of Appeals had held otherwise but Judge Lacombe had there vigorously dissented. The Supreme Court of Alabama, in the Neuberger Case, declared that it was "unable to reconcile the statement of the rule said to govern in such matters with the conclusion there [In re Downing] announced by the District Court." *Page 440 
The three cases which I have just cited all concern the right of a trustee in bankruptcy to attack a conveyance of the bankrupt as fraudulent. That right was conferred upon a trustee by specific act of Congress. The right of a trustee in bankruptcy to challenge the validity of chattel mortgages upon property of the bankrupt was also given to him by act of Congress, but that right is his, as well, by virtue of the fact that he stands in the place of the general creditors. He is deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon as to all property in the custody or coming into the custody of the bankruptcy court. Actof June 22d 1938, ch. 575, § 70 c; U.S.C.A. Title 11, § 110, c.
It is the state law which controls as to what rights a lien or execution creditor would have. In re Bowling Const. Corp.,Petition of Neiswender (District Court, D. Md., May 12th,1927), 19 Fed. Rep. 2d 604; affirmed (C.C.A., FourthCir., January 10th, 1928), 23 Fed. Rep. 2d 403, sub nom.,Sapero v. Neiswender. Now, the New Jersey statute makes a wide distinction between a creditor of the mortgagor and a subsequent purchaser of the mortgaged chattels. Creditors are favored. For instance, a creditor may know, when his debt accrues, that his debtor's property is already subject to a mortgage, yet if such mortgage has not been executed and recorded in accordance with the requirements of the statute, he may, as soon as his debt becomes fastened on his debtor's property, successfully insist that the mortgage, as to his debt, is by force of the statute, absolutely void. Graham Button Co. v. Spielmann, supra.
A creditor, whose debt was subsisting at the time of the giving of a chattel mortgage, may, by subsequently obtaining a judgment and levying on the property mortgaged, place himself in a position to attack the chattel mortgage, Brockhurst v. Cox,71 N.J. Eq. 703; 64 Atl. Rep. 182; affirmed, 72 N.J. Eq. 950;73 Atl. Rep. 1117, and the debts of creditors at large are fastened on the property of an insolvent corporate debtor by an adjudication of insolvency and the appointment of a receiver. Such a receiver stands in the rights of the creditors of the mortgagor, and he is, consequently, *Page 441 
entitled, as their representative, to the same relief that would be given to them in a suit instituted by themselves in their own names. Wimpfheimer v. Perrine, 61 N.J. Eq. 126;47 Atl. Rep. 769; affirmed, 65 N.J. Eq. 770; 50 Atl. Rep. 356; 67 N.J. Eq. 597; 50 Atl. Rep. 356; Bigel v. Brandtjen Kluge, Inc.,129 N.J. Eq. 537; 20 Atl. Rep. 2d 320; affirmed, 131 N.J. Eq. 119; 24 Atl. Rep. 2d 179. To attack chattel mortgages the receiver must, of course, represent creditors whose claims antedated the recording of the mortgage. Riedinger v. MackMachine Co., c., Inc. (Court of Chancery), 117 N.J. Eq. 334; 175 Atl. Rep. 790.
Unquestionably the receiver appointed by this court was invested with the right to contest the validity of the chattel mortgages of the defendant bank. So was the trustee appointed in the bankruptcy proceeding. However, the trustee did not choose to attack them; he preferred, it seems, to recommend a sale of the chattels to Mr. Zeidman, subject to the mortgages. If there is "grave doubt" that a trustee in bankruptcy can sell and transfer his right to set aside a fraudulent conveyance, then it must be also doubted that a trustee can sell and transfer his right to contest the validity of chattel mortgages. Excellent statements of reasons for holding that a trustee cannot sell and transfer these rights may be found in Parker v. Hand (Sup. Ct.,Ill.), 299 Ill. 420; 132 N.E. Rep. 467; Belding-HallManufacturing Co. v. Mercer Ferdon Lumber Co., 99 C.C.A. 123;175 Fed. Rep. 335; Neuberger v. Felis, supra. See, also,Grass v. Osborne, 39 Fed. Rep. 2d 461; Lovell v.Latham Co. (D.C.), 211 Fed. Rep. 374; Glenny v. Langdon,98 U.S. 20; 25 L.Ed. 43, and Lane v. Nickerson, 99 Ill. 284.Webster v. Barnes Banking Co., supra.
I am not unmindful of the fact that this court has said that where creditors have the right to contest the validity of a chattel mortgage for failure to record it as required by statute, that right passes to the purchaser at an execution sale and to the creditor's assigns upon assignment of the debt. Wimpfheimer
v. Perrine, supra. See, also, Cummins v. Wire (Court ofChancery), 6 N.J. Eq. 73, 87; Black v. Mullins Co.
(Supreme Court), 86 N.J. Law 463, 465. But it is *Page 442 
conceded that Mr. Zeidman purchased the mortgaged chattels subject to the lien of the mortgages, and this court and our Court of Errors and Appeals have repeatedly refused to permit one who purchased chattels subject to a mortgage to repudiate the security. In Camden Safe Deposit and Trust Co. v. Citizens'Ice and Cold Storage Co., 71 N.J. Eq. 221; 65 Atl. Rep. 980, the Court of Errors and Appeals had before it such a case. In its decision it quoted with approval a statement of Chief-Justice Beasley strikingly like those made by the federal courts in disavowing the right of a bankruptcy trustee to sell and assign his privilege to attack conveyances as fraudulent or chattel mortgages as invalid: "`* * * By the repudiation of this security it is not the mortgagor, nor its creditors for whose account the sale was directed to be made, who are benefited, but the purchaser, and this to the loss of those creditors whose claims remain partly unsatisfied by reason of the fact that the sum produced by the sale under the condition stated was insufficient to pay them in full. Nothing can be more inequitable than the claim of this purchaser * * *.'"
The order of the bankruptcy referee directed the trustee to sell and deliver possession of "the tangible, physical assets covered by said offer." While it is true that said order concluded with an authorization to the trustee to execute and deliver a bill of sale to Mr. Zeidman "in accordance with the terms and conditions of said offer," the instrument was to be "a bill of sale for said assets." The right to contest the validity of the chattel mortgages was never an "asset" of Aeronautical Manufacturing Company, Inc. That corporation created the mortgages as security for the repayment of money it borrowed from the defendant bank; it affirmed the validity of those obligations by making substantial payments on account of principal; it had no right to contest the validity of those obligations.
Mr. Zeidman's attempted reservation of the right of the trustee to contest the chattel mortgages was, by his own words, a reservation to himself. For some reason which has not been divulged to the court, Mr. Zeidman did not contest the mortgages. Instead, he transferred all the chattels he had *Page 443 
purchased (including the mortgaged machines and equipment) to The Credit Corporation of America. The wording of his bill of sale to that corporation seems to me to clearly negative any thought that he was passing on to it a right to challenge the chattel mortgages of the defendant bank. What was transferred by him was "personal property formerly belonging to and constituting theassets of Aeronautical Manufacturing Company, Inc." (Italics mine.) Then The Credit Corporation of America made its bill of sale to Aeronautical Tools Corporation. Again, it was "personal property formerly belonging to and constituting the assets of Aeronautical Manufacturing Company, Inc.," which was transferred. In both of these bills of sale it was "goods and chattels," the title to which was warranted.
The bill of sale of Aeronautical Tools Corporation to the complainant did not follow the form of the three preceding title instruments. It assigned and transferred "all and singular the machinery, equipment, tools, office furniture and fixtures, as set forth in detail and mentioned in the schedule hereunto annexed, and marked with the letter A." Schedule A identified and listed each chattel transferred; the personalty covered by the two chattel mortgages was included but hundreds of additional machines, tools, dies, articles of furniture and an automobile truck were listed. The habendum clause of the bill of sale described the things transferred as "goods and chattels."
The bill of sale to the complainant is unambiguous and certain. It transferred named and listed articles of personal property; it did not attempt to transfer any supposed right or privilege of attacking mortgages. When the complainant made its purchase, and when it accepted its bill of sale, the defendant's two chattel mortgages were a public record and it knew or it should have known of their existence. It received what it apparently bargained for — specific goods and chattels, nothing more, nothing less.
Those decisions in New Jersey and of our federal courts which hold that when articles of personal property may be legally sold by or on behalf of creditors, a right to contest the validity of chattel mortgages, conditional bills of sale, *Page 444 
and the like affecting that property passes to the purchaser with the transfer of title, have not suggested, so far as I have been advised, that title and the right to contest may not be severed. In fact, so far as I am informed, there is not a reported case in which it has been held that the right to contest passed as an incident of a transfer of the chattels beyond the purchaser who bought, directly or indirectly, from the creditor. All of the evidence in the present case is persuasive upon me that Mr. Zeidman, after assuming to reserve to himself a right to contest, abandoned any thought or plan looking to such a contest and intentionally sold and transferred only the title to the specific chattels he had purchased. Certainly the evidence conclusively indicated, and I find, that the complainant took title only to the articles of personality scheduled in its bill of sale.
For the reasons I have given, I conclude that complainant does not have the status of a subsequent purchaser in good faith to qualify it to successfully attack the chattel mortgages of the defendant. I shall, therefore, advise a decree dismissing the complainant's bill, with costs. *Page 445