Graham Button Co. *v.* Spielmann.

---

THE RECEIVER OF THE GRAHAM BUTTON COMPANY

*v.*

CHARLES SPIELMANN et al.

1. To render a chattel mortgage valid against the creditors of the mortgagor, the affidavit, stating the consideration, must show particularly how the debt on which it is founded arose.

2. A creditor of a mortgagor, to be in position to contest the validity of a chattel mortgage, must have his debt fastened on the mortgagor's property.

3. By an adjudication of insolvency and the appointment of a receiver, the debts of creditors at large of an insolvent corporation are fastened on its property.

4. A deed or other instrument which is void as against creditors is void also against those who represent creditors.

5. The receiver of an insolvent corporation is the representative of its creditors, and as such may, by suit or defence, avoid any instrument which is void as against them.

6. To successfully contest the validity of a chattel mortgage, the receiver of an insolvent corporation is not required to show that it is fraudulent as to creditors, but all he need do is to show such facts as, under the statute, render it void as against the creditors of the corporation.

7. In order to successfully contest the validity of a chattel mortgage, a subsequent purchaser or mortgagee must have made his purchase or taken his mortgage without notice of the prior mortgage, but a creditor is subject to no such condition—he may know of the existence of the mortgage when he becomes a creditor and still have a right to contest it.

---

On final hearing on bill and answer and proofs taken before the court.

Graham Button Co. v. Spielmann.

*Mr. W. Bradford Smith,* for the complainant.

*Mr. C. B. Rushmore* (of New York), for the defendants.

VAN FLEET, V. C.

The Graham Button Company, a domestic corporation, executed a chattel mortgage to the defendants on the 30th day of September, 1891, for $1,500, payable on demand. The execution of the mortgage was proved on the day of its date, an affidavit respecting its consideration was made by one of the mortgagees on the 10th day of November following, and the mortgage was recorded in the proper office on the succeeding 28th day of December. On the 5th day of January following the corporation was adjudged to be insolvent and the complainant was appointed its receiver. He has brought this suit, in his capacity as receiver, for the purpose of obtaining a decree adjudging that the mortgage just mentioned is void as against the creditors of the corporation, to the end that the chattels covered by it may be sold and their proceeds distributed among the creditors of the corporation. On the argument but a single fault was imputed to the mortgage, and that was, that its consideration, when it was recorded, was not stated under oath, in the manner required by the statute, in order to make it a valid instrument as against the creditors of the mortgagor. In all other respects it was conceded that it is a perfectly valid paper, and even in its faulty condition it was admitted that, as between the parties to it, it is entitled to full force.

The statute, regulating the execution and registry of chattel mortgages, in force when the mortgage in question was executed, declares, in substance, that every chattel mortgage which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, * * * unless the mortgage, having annexed thereto an affidavit, * * * stating the consideration of the mortgage, and, as nearly as possible the amount due and to grow due thereon, be recorded in the proper office. *Rev. Sup. p. 491 § 11.*

The possession of the things mortgaged remained unchanged. They were in the possession of the mortgagor when the mortgage was executed and remained there until the complainant was appointed receiver, when he took possession of them. They have never been in the possession of the mortgagees. When the mortgage was recorded there was an affidavit annexed to it, made by one of the mortgagees, which stated

"that the consideration for said mortgage is the indebtedness of the mortgagor to the mortgagees, consisting of a present indebtedness of $1,500, and of money hereafter to be advanced by said mortgagees to the said mortgagor, during the pendency of this mortgage not exceeding in all $1,500."

This affidavit is radically defective. It conforms neither to the letter nor the spirit of the statute. A prior statute, containing a provision identical in purpose and expressed in precisely the same words, has been construed. With regard to that statute, it was said that it was intended as a guard against dishonesty, and to make it effectual to that end it required the mortgagee to state the consideration of his mortgage under oath; that is, not merely to state the sum for which his mortgage was given, but to state how the debt, on which his mortgage was founded, arose—what was the cause of his debt, and how the relation of creditor and debtor between himself and his mortgagor was created. The legislative purpose in the enactment of that statute was held to be to compel the mortgagee to commit himself to a statement or disclosure of his debt or claim, under oath, when he made his mortgage a matter of public record, sufficiently precise and explicit to afford the creditors of the mortgagor, in case fraud was suspected, a fair opportunity to ascertain, by judicial investigation or otherwise, whether the mortgage was an honest security or a mere fraudulent cover. *Ehler* v. *Turner, 8 Stew. Eq. 68, 69.* Nothing, as it seems to me, can be more certain than that simply saying, under oath, that the consideration of a mortgage is the indebtedness of the mortgagor to the mortgagee, consisting of a present indebtedness of $1,500—and that is all that is said here—without disclosing how the debt on which the mortgage is founded arose—whether it arose out of a sale, a loan, or

how otherwise—is not a compliance with the statute; on the contrary, a statement of consideration, expressed in language so general and indefinite, so plainly contravenes the fundamental purpose of the legislation, that if it were adjudged to be a compliance with the law, such judgment would unquestionably defeat the most salutary provision of the statute. The command of the statute is imperative. Unless the mortgage, when recorded, is accompanied by an affidavit which states fully and plainly the consideration on which it is founded, the statute says that the courts shall treat the mortgage as absolutely void as against the creditors of the mortgagor.

But this right to have a mortgage thus defective adjudged to be a nullity, does not inhere in all the creditors of the mortgagor. A creditor without judgment or other legal process, and without a right by law to have his debtor's property seized and sold for his benefit, has no such right. To be in a position to assert this right, he must have his debt fastened on his debtor's property by law, judicial process or in some other way, for, until his debt is so fastened, he has no right to or interest in his debtor's property, and cannot ask the court to control its disposition, nor can he prevent his debtor from exercising full and complete dominion over it. The doctrine is entirely settled that it is only creditors whose debts are fastened on their debtors' property that have the right to call in question the validity of a mortgage which this statute makes void as against the creditors of the mortgagor. *Currie* v. *Knight*, 7 *Stew. Eq. 485, 486; Jones Chat. M. § 245; Thompson* v. *Van Vechten, 27 N. Y. 568, 582; Jones* v. *Graham, 77 N. Y. 628.* The statute makes a wide distinction between creditors and subsequent purchasers and mortgagees. A subsequent purchaser or mortgagee, to be in a position where he may take advantage of the failure on the part of a prior mortgagee to comply with the terms of the statute, must have made his purchase or taken his mortgage in good faith; that is, without notice of such prior mortgage, but not so with a creditor. He may know, when his debt accrues, that his debtor's property is already subject to a mortgage, yet if such mortgage has not been executed and recorded in accordance with the requirements of the statute,

he may, as soon as his debt becomes fastened on his debtor's property, successfully insist that the mortgage, as to his debt, is, by force of the statute, absolutely void. *Williamson* v. *New Jersey Southern R. R. Co.*, *1 Stew. Eq. 277, 285 ; S. C. on appeal, 2 Stew. Eq. 311, 336.*

Under the law, as above stated, the first question to be decided is, were the debts of this corporation fastened on its property when the bill in this case was filed ? The entire assets of the corporation, including the chattels covered by the defendants' mortgage, have been converted into money. The amount realized from all sources is about $3,700. Preferred debts to the amount of $927, and unsecured debts or debts without a preference to the amount of $7,530, have been proved before the receiver. These figures make it plain that the unsecured creditors will receive less than thirty-five cents on the dollar of their debts. The receiver of an insolvent corporation becomes, as soon as he qualifies, invested, by force of the statute, with full power to demand, sue for and take into his possession all of the property of every description belonging to the corporation, and to convert the same into money. The statute then ordains that all moneys which he shall receive, by virtue of the authority invested in him, shall be disposed of by him, under the order of the court, among the creditors of the corporation. *Rev. p. 189 § 72.* And in prescribing the rule which shall regulate the distribution of the moneys, the statute says that in payment of the creditors and distribution of the funds of any insolvent corporation, the creditors shall be paid proportionally to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been by confession for the purpose of preferring creditors. *Rev. p. 191 § 80.*

The effect of these two provisions is, as it seems to me, to fasten the debts of a corporation on its property the moment it is adjudged to be insolvent and a receiver is appointed to wind up its affairs. From that time forth its property is, by law, appropriated exclusively and irrevocably to the payment of its debts. Power is conferred on its receiver to take possession of all of its property and to convert it into money, to the end that the money

thus obtained may be distributed among its creditors. No other application·or disposition can be made of the money realized from its property. It must be paid to its creditors, and in distributing it among unsecured creditors, the statutory direction is that they must be paid equally in proportion to their respective debts. By an enactment, expressed in this form, the debts of an insolvent corporation are, in my judgment, just as plainly and effectually fastened on its property as they would have been had the statute said, in direct terms, that when a corporation is adjudged to be insolvent its property shall at once become liable for the payment of its debts. A legislative declaration, in the form just stated, has been held to be sufficient to fasten the debt of a creditor at large on the lands of his deceased debtor. The statute, making the lands of a decedent liable for the payment of his debts, declares in substance that they shall be and remain so liable for one year after the decedent's death, and after that so long as the decedent's heir or devisee shall continue seized thereof. The court of errors and appeals has decided that, by force of this statute, the debts of a decedent are fastened on his lands, and that a creditor at large, after he has proved his debt, may, in virtue of the lien created by the statute, maintain an action to set aside a conveyance made in fraud of his rights. The opinion of the court was pronounced by Chief-Justice Beasley, who, on the point now under consideration, said that it would be observed that the statute made debts a burthen on the lands of the decedent of which "he shall die seized; consequently when lands are attempted to be conveyed in fraud of creditors, as the statute against frauds and perjuries make such conveyance absolutely void, such conveyance cannot disturb the seizin of the decedent in such lands, so far as relates to the creditors so injured. With regard to his creditors, the debtor, in contemplation of law, dies seized of the lands, notwithstanding such fraudulent alienation, and, in my judgment, therefore, a creditor, under such circumstances, has his claim fastened upon the land of his debtor, and such lien will give him, within the rule established by the decisions, the footing requisite to maintain himself in a court of equity." *Haston* v. *Castner, 4 Stew. Eq. 697, 700.*

Following the principles thus established, this court held, in *Currie v. Knight*, *7 Stew. Eq. 485*, that the statute regulating the distribution of the estate of debtors who die insolvent, and which declares that the estate, real and personal, of a testator or intestate, in case the same shall be insufficient to pay all his debts, shall, after certain preferred debts have been paid, be distributed among his creditors in proportion to the sums that shall be due to them respectively, created a lien in favor of creditors at large, and that such a creditor might, after having proved his debt, maintain a suit, in virtue of the lien thus created, to avoid a chattel mortgage made by his debtor, and which, in consequence of the failure of the mortgagee to file it, was, by the statute, void as against such creditor. The train of reasoning by which this conclusion was reached was this: that if a statutory declaration that the property of a debtor shall be liable for the payment of his debts creates a lien, the same result must follow where the direction is that his property shall, in a certain condition of affairs, be distributed exclusively to his creditors. In both instances the law takes possession of the debtor's property for the benefit of his creditors, in order that his property may be converted into money for the payment of his debts. After the property of a debtor passes into the custody of the law pursuant to either statute, the right of his creditors to have his property converted into money and the money applied in discharge of his debts is, in all essential respects, precisely the same as that of a judgment creditor after levy under execution. In both cases the law grasps the property in order that it may be applied, by legal methods, to the payment of its owner's debts. When it is seized by execution, the proceeds of its sale can only be applied in discharge of a particular debt or debts, but when it is seized for the purposes of administration, its proceeds must be distributed to all creditors standing on the same plane, who make proof of their debts. The lien, however, created by the seizure is just as perfect and effectual in the one case as it is in the other.

My conclusion, therefore, is that, both according to the true construction of the statute now under consideration, as well as

:according to the construction which has been given to kindred :statutes, it must be held that the debts of creditors at large of an ·insolvent corporation are fastened on the property of the corporation by the adjudication of insolvency and the appointment of ·a receiver. Hence it follows necessarily that a creditor, who has ·proved his debt before the receiver, may maintain a suit to set .aside a chattel mortgage, which is, as against him, by force of the statute, absolutely void.

But .the person who attacks the defendants' mortgage is not .a creditor of the mortgagor, but its receiver. He, however, represents its creditors. He is made the representative of its credit-·ors by express provision of the statute. The seventy-seventh ·section declares that the person who shall be appointed the receiver of an insolvent corporation shall be deemed and taken to be the receiver of its creditors and stockholders; and the sev-·enty-third section requires that the person who is appointed the receiver of an insolvent corporation shall, before he enters on the discharge of his duties, take an oath that he will faithfully, honestly and impartially execute the powers and trusts reposed in him as the receiver of its creditors and stockholders. In *National Trust Co.* v. *Miller, 6 Stew. Eq. 155, 158,* it was said, . in substance, that the receiver of an insolvent corporation was an ·officer created by law for the protection of the rights of the creditors of the corporation, and to accomplish the purposes of his ·creation it was indispensably necessary that he should be clothed with their attributes and equities.

By the thirteenth section of the act regulating assignments made by debtors for the benefit of their creditors, it is enacted, that any assignee, to whom a debtor shall assign his estate, shall have as full power to dispose of such estate as the debtor had at the time he made the assignment, and that such assignee shall also. have power to sue for and recover, in his own name, everything belonging or appertaining to the estate of his assignor. *Rev. p. 39.* The latter clause of this section, in which a right to· sue is given to the assignee, the court of errors and appeals have decided may be legitimately construed, in view of the purposes of the act, to embrace all property of the assignor which may be

made available for the payment of his debts. Immediately following the statement, respecting the construction which this clause will bear, the court, speaking by Mr. Justice Depue, say: "Considering that the assignment creates a trust for the benefit of all the creditors of the assignor, and that the legislative purpose was to secure an equal and just division of the estate of the debtor among his creditors, a construction less comprehensive will defeat the legislative purpose. In virtue of the trust so created the assignee becomes the representative of and actor for the creditors, and his powers should be so construed as to enable him to carry into full effect the purpose which the statute designed." *Pillsbury* v. *Kingon, 6 Stew. Eq. 287, 301.* The court accordingly held that an assignee under the statute has a right to maintain an action, as the representative of the creditors of his assignor, to set aside a deed which his assignor, prior to the assignment, had made in fraud of his creditors. As I understand the opinion of the court, the foundation of its judgment is the principle laid down by Baron Parke, in *Doe ex dem. Grimsby* v. *Ball, 11 Mees. & W. 531, 533,* in these words: "A deed which is void as against creditors is void also against those who represent creditors."

Adopting this principle as the rule of decision in this case, there is but one thing the court can do, and that is to pronounce the judgment against the defendants' mortgage which the statute prescribes. A mortgage, in the faulty condition in which the defendants' mortgage was when it was recorded, is, according to the express words of the statute, absolutely void as against the creditors of the mortgagor, and as, by force of the principle just stated, such an instrument is equally invalid as against the representative of creditors, it would seem to be undeniable that the same judgment precisely must be pronounced on such an instrument in a suit by a receiver that the court would be bound to pronounce in a suit by creditors in their own names. The receiver in such a case stands in the rights of the creditors of the mortgagor, and he is, consequently, entitled, as their representative, to the same relief that would be given to them in a suit instituted by themselves in their own names. The statute of fraud

Graham Button Co. v. Spielmann.

makes a deed executed in fraud of creditors absolutely void as
against the creditors of the grantor; and the statute under con-
sideration makes a chattel mortgage, executed in disregard of its
requirements, absolutely void as against the creditors of the mort-
gagor.    To invalidate the first, fraud must be shown, and, to in-
validate the second, it must appear that the statutory requirements
have not been observed in its execution; but when the first has
been shown to be fraudulent, and when it appears that the second
was not executed in compliance with the requirements of the
statute, then both are placed, by positive law, in precisely the
same category; both are then without the least legal force as
against creditors, and must be so treated by the courts.    To in-
validate a chattel mortgage, executed in disregard of the require-
ments of the statute, the person assailing its validity is not re-
quired to show, in addition to such fact, that it was executed to
defraud creditors.    The statute requires nothing of that kind,
but, on the contrary, expressly declares, that if the statutory re-
quirements have not been observed in its execution, it shall for
that reason, and that reason alone, be treated as void as against
creditors.    The fault which renders it void as against creditors
is not fraud, but the failure of the mortgagee to perform a duty
which the statute imposes upon him.

  This view, it must be admitted, does not stand in strict accord
with that expressed in *Shaw* v. *Glen, 10 Stew. Eq. 32.*    It was
there held, that while an assignee under our statute might main-
tain an action to recover property which his assignor had con-
veyed away in fraud of his creditors, yet he could not successfully
defend a suit. brought to enforce a chattel mortgage, which,
though untainted by fraud, was, nevertheless, by force of the
statute, void as against the creditors of his assignor.    This de-
cision was placed on this ground: That, in cases unaffected by
fraud, the assignee 'takes' the estate assigned subject to such.
equities as existed against it in the hands of his assignor.    In
other words, that as to honest liens, although they may be void
as against creditors, the assignee takes the estate assigned in the
same plight and condition in which his assignor held it.    But I
am unable to reconcile the basis of decision, thus adopted, with

9

the leading principle established by the judgment of the court of errors and appeals in *Pillsbury* v. *Kingon,* which is, that in virtue of the trust created by an assignment pursuant to the statute, the assignee becomes the representative of the creditors of his assignor and stands invested with their rights, and may, consequently, avoid, by suit or defence, any instrument which they themselves might avoid.

The right of the complainant to maintain this action as receiver, on the authority of *Pillsbury* v. *Kingon,* would seem to be entirely clear. And this view would seem to have been approved in *Hopper* v. *Lovejoy, 2 Dick. Ch. Rep. 573,* a case involving the same questions that are involved in this. That case was heard by Advisory Master Stevens, who, in deciding it, held that the receiver of an insolvent corporation had a right, as the representative of its creditors, to maintain an action to set aside a chattel mortgage made by the corporation, and which, though honest, was, by force of the statute, void as against creditors. He, in addition, held that the chattel mortgage on trial in that case was void, for the reason that it had not been executed in such manner as to entitle it to be recorded. The mortgage had been acknowledged by the president of the corporation, but its execution was not otherwise proved or authenticated. Such an authentication of the execution of a deed by a corporation, the advisory master held was insufficient to entitle it to be recorded, so that its record would operate as notice to creditors and others. On appeal, the court above dissented from this latter view, and held that a deed by a corporation may be so acknowledged as to entitle it to be recorded, and thus make its record notice of its existence. In all other respects, as I understand the opinion of Mr. Justice Dixon, the appellate court concurred in the views expressed by the advisory master. The case, in my judgment, is a direct authority in favor of the complainant on both of the points involved in this case.

A decree will be made declaring the defendants' mortgage void.