ANTON F. MULLER

*v.*

SAMUEL HUBSCHMAN et al.

[Decided December 28th, 1914.]

1. Before a creditor can in this court avail himself of the provisions of the Bulk Sales act (*P. L. 1914 p. 59*), which annuls a certain class of sales as against the vendor's creditors, unless certain prescribed steps are taken, the creditor must show that he has acquired by judgment and execution, or otherwise, a lien upon the vendor's goods.

2. A bill by a creditor of the vendor, against the buyer and the buyer's vendee, is not maintainable, which alleges that the buyer had disposed of all the goods sold to him, and prays that so much of its price in the hands of the buyer's vendee as will satisfy complainant's claim be decreed to be paid over to the complainant.

---

*Mr. Elias A. Kanter,* for the complainant.

*Mr. Joseph Steiner,* for the defendants.

STEVENS, V. C.

This is a bill filed by a creditor of the defendant Hubschman, to obtain a money decree against Hubschman and his vendee, Sommer, on the theory that he has a cause of action against them in this court under the Bulk Sales act. *P. L. 1914 p. 59* The bill alleges that Hubschman, being the owner of a hardware store, sold it to Sommer in violation of the provisions of that act, be-

cause the purchaser did not make inquiry of the seller for the names and residences of his creditors and of his indebtedness to them and did not give the requisite ten days notice. The bill further alleges that Sommer has disposed of all the goods sold to him and prays that he may be deemed trustee of their price.

The bill is, I think, demurrable, in that it does not show that complainant is a creditor, who has acquired by judgment and execution or otherwise a lien upon Hubschman's goods. The charge is only that he is a general creditor, and it is sought to uphold his right to sue on the ground that the act in question avoids the sale "as against the creditors of the seller." But the eleventh and twelfth sections of the statute of frauds (*Comp. Stat. p. 2617*) contain similar language, and yet it has uniformly been held that before the creditor can avail himself of the provisions of that act, "he must have his debt fastened on his debtor's property by law, judicial process or some other way." *Graham Button Co.* v. *Spielmann, 50 N. J. Eq. 123.* The contrary view was repudiated by the court of errors and appeals in *Haston* v. *Castner, 31 N. J. Eq. 697.*

The fourth section of the Chattel Mortgage act (*Comp. Stat. p. 463*) declares

"that chattel mortgages not accompanied by immediate delivery and followed by an actual and continued change of possession shall be absolutely void as against the creditors of the mortgagor, unless recorded,"

and, "yet it is," says Vice-Chancellor Emery, in *Wimpfheimer* v. *Perrine, 61 N. J. Eq. 132; affirmed, 67 N. J. Eq. 598,* "entirely settled that the recovery of such judgment and the issuing of execution entitling the judgment creditor to a lien upon personal property of the debtor is necessary in order to put a creditor in a position to attack the validity of an unrecorded mortgage."

There is nothing in the present act that would authorize the court to depart from this well-established rule. Its purpose, declared in its title, is the prevention of fraud. Because proof of fraud is sometimes so difficult, it goes to the extent of annulling an entire class of sales, innocent or fraudulent, as against the vendor's creditors, unless certain prescribed steps are taken whose object is to notify them of the contemplated sale. The act so far

restricts the seller in the enjoyment of his property rights that some courts have held similar though perhaps somewhat more drastic legislation to be unconstitutional. *Wright* v. *Hart, 182 N. Y. 330.* While our supreme court has taken a contrary view (*Kett* v. *Masker, 86 N. J. Law 97*), it yet remains true that if a *creditor* must clothe himself with a judgment before he can take advantage of that provision of the statute of frauds (section 12), which declares void every conveyance of goods and chattels contrived in fraud with intent to hinder, delay or defraud creditors, so must he, where the right is given to attack a transaction that may be innocent and is only voidable because the statute makes it so.

It is said that the time limit would some time prevent relief from being had in this court, but I cannot understand why, because the right of attack is limited to ninety days, this should, of itself, be a ground for a different rule. It seems to me rather that when the legislature saw fit to give this new and drastic remedy—a remedy which confounds the innocent and the guilty because of the difficulty of discriminating between them—it did not think it wise to allow it to be applied, except for that limited period.

But there is another difficulty with complainant's case. The relief ordinarily given by this court is to avoid the fraudulent sale and to declare that the vendor's property is still subject to the lien of complainant's judgment and execution. Here the relief asked for is different. The bill charges that the buyer has sold all the property. He asks that so much of its price, in the hands of the buyer's vendee, as will satisfy his claim, be paid over to him. This court would first have to determine the amount due from buyer to complainant—the appropriate function of a common law court—and then, on the basis of the finding, give a money decree against the buyer's vendee. I doubt very much whether this court would have jurisdiction to do what a common law court could do equally well in an action for goods sold, as against Hubschman and for money had and received, as against Hubschman's vendee, Sommer, if the act in question subject him to this liability.