THE CUMBERLAND TRUST COMPANY OF BRIDGETON
complainant-appellant,

*v.*

B. S. AYARS & SONS COMPANY, defendant, J. E. TYGERT
COMPANY, petitioners-respondents.

[Argued June 18th, 1915. Decided November 15th, 1915.]

A contract whereby T. agreed to ship to A., a corporation, for sale to others certain fertilizers, and providing that A. would hold in trust and separate for settlement of T.'s account with A. all said goods unsold and all currency, open accounts, notes, liens, mortgages or other value received for goods sold—*Held*, to preserve to T. a· legal or equitable title to such goods and their proceeds, unaffected by a chattel mortgage given by A. or its subsequent insolvency and a receivership.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *83 N. J. Eq. 479*.

*Mr. Walter H. Bacon,* for the appellant.

*Mr. David O. Watkins,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The questions in this case arise on the intervention of J. E. Tygert Company in an insolvency and receivership proceeding instituted by the Cumberland Trust Company, as complainants, to wind up the affairs of B. S. Ayars & Sons Company. The complainant is holder of a mortgage on the property of the latter company, both real and personal, and the ·fundamental question is whether the Tygert company is prior in right to the mortgage creditors and to the title of the receivers as represent-

ing general creditors, as to certain mortgages, notes and other evidences of debt, and certain book accounts shown in the so-called "Farmers' Ledger" of 1913, of the Ayars company, by reason of the terms of a written instrument dated November 13th, 1912, and signed for the Ayars company by "Arthur D. Ayars, President and Treasurer."

The significance and importance of this paper will better appear when the methods of business of the Ayars company are understood. That company was in the business of canning vegetables and fruits, receiving large quantities in crop season from various growers. To aid these growers, and help its own business, it dealt in fertilizers compounded according to various formulæ and obtained from various manufacturers, including the Tygert company, selling such fertilizers to the growers on credit and giving credit on the price thereof for the value of products delivered later to its canning factory. All this meant little cash until the canned product was marketed. So, the Tygert company gave rather long credit to Ayars company for fertilizer delivered to it, and to protect itself made the arrangement set forth in the written instrument in question. It is framed as a proposition from Tygert company; addressed to Ayars company, agreeing to "ship" them certain fertilizers at specified prices to such amount as may be agreed upon. Then follow terms as to freight, times and places of shipment, and settlement by cash or notes of Ayars company, or of other parties, as the case may be. The important clause, near the end, is this:

"It is also agreed that you will hold in trust, and separate for the settlement of our account with you all of said goods unsold, and all currency, open accounts, notes, liens, mortgages or other values received for goods sold."

The meaning and legal effect of this provision do not seem to be debated by appellant. Counsel for the Tygert company maintains that under the contract, and especially in view of this clause, the Ayars company acquired no title to the fertilizers delivered to them thereunder, though they could transfer good title thereto, to the various growers to whom they sold them. We need not stop to determine by what name to call this ar-

rangement, whether a trust or a *del credere commission,* or a consignment on sale, or what not; the important thing is that there was nothing illegal about the contract, that under it either no title vested in the Ayars company, in either the goods or the proceeds of sale thereof, or that that company was a trustee to sell these goods, collect the proceeds or obligations therefor, keep these in a separate fund, and remit to the Tygert company in due course; and that the equitable title, or, perhaps, legal title, in all goods unsold remained the property of the latter company. No question arises in this case under the conditional Sales act; so that if the agreement was duly executed as the serious and deliberate act of the parties and remained in force, the Tygert company, as to the fertilizers and these proceeds, retained either an equitable title or a legal one, and the mortgagee acquired no lien on, and the receivers no rights to either goods or proceeds except as to such parts of the proceeds as represented profit to which the Ayars company was entitled under the contract after settlement of the claims of the Tygert company.

It was urged before the vice-chancellor, first, that the alleged contract was not binding on the Ayars company because never authorized by the board of directors, and because Arthur D. Ayars had no authority by virtue of his office to sign the same on behalf of his company; secondly, that the paper was either intended as a mere form, or, if originally entered into as a serious obligation, was subsequently waived by the assent of the parties as shown by their course of action. We cannot find adequate support for either of these propositions. With respect to the official authority of Arthur D. Ayars, it appears that he acted habitually as representing his company in somewhat similar transactions, and that the company is estopped from repudiating his authority to make such a contract as this, after the Tygert company had entrusted it with large amounts of merchandise thereunder, most of which has been disposed of. The estoppel, of course, binds the mortgagee and receiver.

The claims that the contract was not meant to be taken seriously, and was later waived, are not borne out by the evidence. Situations may arise in which an apparently solemn obligation is not intended as such by either party (*McClurg* v. *Terry, 21*

*N. J. Eq. 225*); but the evidence must be cogent, indeed, to induce a court to disregard or set aside a written contract sought to be enforced by one of the parties. As to this, as well as the claim of waiver or mutual rescission, there is nothing in the case to call for serious consideration.

The court of chancery decreed that under the contract "all the said goods unsold, and all currency, open accounts, notes, liens, mortgages or other values received for goods sold under and by virtue of the said contract, were held in trust and separate for the settlement of the account between the said B. S. Ayars & Sons Company and the petitioner at the time of the insolvency of the said B. S. Ayars & Sons Company; and that the petitioner herein has a good and sufficient title to and is entitled to all of said goods unsold and all currency, open accounts, notes, liens, mortgages or other values received for goods sold under and by virtue of said contract; and that the said receivers in this cause shall have no right, title or interest, either as receivers, or otherwise, either in said goods unsold or in the currency, open accounts, notes, liens, mortgages or other values received for such goods sold as aforesaid, excepting to hold the same in trust for the petitioner herein."

So far as relates to the portion of the decree declaring that the petitioner has a good and sufficient title to the goods unsold and the proceeds of goods sold, whatever form such proceeds have taken, including book accounts, and that the receivers have no right therein except to hold them for the benefit of the petitioners, the decree will be affirmed.

But the court went further, and awarded an injunction against the receivers collecting the unpaid balances for goods sold, or interfering with the Tygert company in collecting the same. This, we think, went too far, for the reason that the accounts in the "Farmers' Ledger" embraced charges relating not only to Tygert fertilizers, but to others received from other makers; and as such accounts would normally be indivisible for purposes of suit by the Ayars company, and the separation of the various items into those covered by the agreement and those not so covered, will be a matter of considerable difficulty, and there may be a surplus applicable to profits to which Ayars

& Company would have been entitled, the convenient adminis-
tration of the whole matter requires that the receivers should be
left free to collect these accounts, and, under the direction of the
court of chancery, segregate and pay to petitioner such part
thereof as is covered by the contract of November, 1912. As to
mortgages, notes and similar securities, or evidences of debt,
petitioner will be entitled to have such of them from the re-
ceivers as it may show to be covered by the contract. In these
respects the decree below should be modified, otherwise it will
be affirmed.

The costs will be divided.

*For affirmance*—GARRISON, SWAYZE, PARKER, BERGEN, MIN-
TURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE,
HEPPENHEIMER, WILLIAMS, TAYLOR—13.

*For reversal*—None.