FRANK KARKUFF, complainant,

*v.*

MUTUAL SECURITIES COMPANY, defendant.

[Decided October 14th, 1930.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"This is an interpleader suit over a fund of $600 deposited in court by complainant, being the unpaid balance due on an automobile purchased by him.

"It appears by the proofs that the car in question was purchased March 22d, 1924, by defendant Mutual Securities Company for $1,188.10, for one Sharp, trading as Plainfield Flint Company, and delivered to Sharp on his execution and delivery to the securities company of a check for $237.62, 'time draft' for $950.48, and 'negotiable trust receipt' for the car.

"By the terms of the negotiable trust receipt Sharp, as 'trustee-bailee,' acknowledged receipt of the car from the securities company, as owner, and agreed to hold in trust for the holder of the contemporaneously executed 'time draft' and

to return it on demand in good order and unused, except that, upon obtaining the prior written consent of the holder of the time draft, he might sell the car for their account for not less than $1,188.10 and deliver the proceeds of sale to the holder of the time draft. The time draft was to be security for the performance of Sharp's obligations under the trust receipt. The time draft was drawn to the order of the securities company, to mature June 20th, 1924, and recited that it was security for Sharp's obligation under the trust receipt.

"Sharp took the car to Plainfield, put it in a warehouse, and on April 11th, borrowed $950 from defendant Brunson, giving Brunson the warehouse receipt as security.

"On May 10th, Sharp sold the car to complainant on a conditional sales agreement. Complainant paid part cash and agreed to pay the balance of $801 in twelve monthly installments, evidenced by his promissory note (payable at the office of the securities company), attached to the conditional sales agreement. Sharp endorsed the note in blank, executed an assignment of his interest in the conditional sales agreement and note and delivered the assignment, agreement and note to Brunson; Brunson surrendered the warehouse receipt and the car was delivered to complainant.

"Brunson sent the conditional sales agreement and note to the securities company, with a letter signed by Sharp and written on Sharp's letterhead, asking them to 'draw your check for the proceeds due us made payable to A. J. Brunson and mail it to 105 East Front street, Plainfield, New Jersey' (Brunson's address), but saying nothing about the assignment to Brunson, which assignment was retained by Brunson.

"The securities company, having a balance due them from Sharp of $950.48 (more than the entire face of the note), figured that there was nothing 'due' Sharp, and sent no check to Brunson. Brunson and the securities company knew nothing of each others claims in the matter until June, when there was some correspondence between them. Complainant has paid to the securities company three installments on the note, and paid the balance into court and obtained decree of interpleader against the two claimants.

"The securities company had no prior claim over Brunson by reason of the so-called 'trust receipt.' It is contended on behalf of that company that it was the purchaser and owner of the car—not Sharp; but the proofs contradict this. It is true that the securities company gave its check to the Newark Flint Company for the full purchase price of the car, but Sharp contemporaneously gave the securities company his check for twenty per cent. of that amount (together with the time draft for the balance and the 'trust receipt'). Markey, the officer of the securities company who handled the transaction admitted, when questioned by the court, that the securities company advanced the money to Sharp so that he might purchase the car. The evidence also shows that Sharp, not the securities company, got the manufacturer's invoice for the car. The securities company was in the business of financing the purchase of cars for others, not buying cars for its own account.

"It is quite clear that Sharp bought the car and was the owner thereof, not the securities company. It follows that the so-called 'trust agreement' was in fact and essence a chattel mortgage. *Commonwealth Finance Corp.* v. *Schutt, 97 N. J. Law 225.* It was not verified or recorded, and was invalid as against Brunson, who had no notice. Since Sharp was the owner of the car, he received the proceeds of his subsequent sale of the car not as bailee or trustee for the securities company, but for himself, as his own property.

"The conditional sale agreement is not particularly material in the present case. It was simply security for the payment of the note given by Karkuff to Sharp—and that note has been paid by Karkuff by the payment into court of the balance due thereon—this suit being as to the ownership of such balance.

"The proofs show that when Sharp sold the car to Karkuff and took the latter's note, he (Sharp) endorsed the note in blank and delivered it (together with an assignment of the conditional sale agreement) to Brunson, in exchange for Brunson's delivery of the warehouse receipt. Title to the note thus passed to Brunson.

"Brunson, having title to the note, sent it (and the conditional sale agreement) to the securities company, with the letter from Sharp to the securities company hereinbefore referred to, not disclosing himself (Brunson) as having title to the note or conditional sale agreement, or any interest therein—but in such way as to appear that Sharp had title and was himself endorsing and sending the papers as his (Sharp's) own transaction with the securities company.

"The securities company had no other knowledge or notice of Brunson's claim or interest, and acted on their belief of Sharp's ownership—a belief caused by Brunson—so that instead of sending to Brunson, as Sharp requested, the balance apparently due to Sharp after deduction of its own charges for collection and other services, the securities company kept that balance and credited the amount upon the indebtedness which Sharp owed on his original note. This it would have had a perfect right to do, so far as the arrangements between it and Sharp were concerned.

"Brunson contends that the securities company had notice of his claim or interest by reason of prior dealings between himself and Sharp and the securities company. This contention is without basis, for the proofs show that there had not been a prior transaction similar to this (where Sharp sold a car on which the securities company had a trust receipt), and also show that there had been no prior transaction in which Brunson was involved by name—the prior transactions had been with a bank.

"The situation then, reduced to its simple and material elements, is this:

"B. (Brunson) sends C. (the securities company) a promissory note made by K., payable to bearer, at the same time causing C. to believe that it is S. who is sending it. C. receives it as coming from S., discounts it, and credits the proceeds on a prior indebtedness due from S. to C. A 'number of weeks elapse before B. discloses the facts to C. and asserts claim of ownership of the note.

"In this situation it seems clear that Brunson is estopped from asserting his ownership of the note. In reliance on

his representation the securities company changed its position, by crediting Sharp with payment of about seventy-five per cent. of his debt instead of suing him or otherwise enforcing the collection.

"The securities company is entitled to the fund in dispute."

*Mr. Robert Newton Crane,* for the defendant-appellant.

*Mr. Andrew J. Whinery,* for the complainant-appellee.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.  14.

*For reversal*—None.