The petitioner was appointed insolvency receiver of Premo Motors, Incorporated, which was engaged in the business of buying and selling automobiles at retail, on January 7th, 1931. Eleven days prior to that appointment, and in contemplation thereof, the defendant Commercial Credit Corporation took fifteen automobiles from the possession of the insolvent company under a claim of ownership and refused to deliver them to the receiver on his demand. Thereupon this petition was filed for an order directing defendants to deliver the automobiles to the receiver. The defendants answered and the matter was referred to a master to take testimony and other evidence and report as to the rights of the parties. Pending disposition of the issues raised by the pleadings, and by consent of the parties, the automobiles were ordered sold and the moneys deposited in court, which was done. The amount on deposit with the clerk is $8,790.68. The controversy arises out of the following state of facts:
Between February and July, 1930, Premo, Incorporated, ordered in writing from the manufacturers, through Newark Motors, Incorporated, distributors of Chrysler and Gardiner automobiles, fifteen cars, which were shipped and consigned by the manufacturers to Newark Motors, Incorporated. *Page 14 
For the sake of brevity Premo Motors, Incorporated, will be hereinafter referred to as Premo; Newark Motors, Incorporated, as Newark, and Commercial Credit Corporation as Commercial.
Upon the arrival of these cars at the Lehigh Valley Railroad Company freight yards in Newark the original and copy of the invoices were sent to Premo by Newark with notices of such arrival. Premo, not having sufficient capital to pay for the cars, arranged with Commercial to finance the purchase, some to the extent of one hundred per cent. and others ninety per cent., Premo to pay the balance, together with delivery, freight, advertising and unloading charges. Before removal of the cars from the freight yard Commercial issued its check to the order of Newark and received from Newark bills of sale for all of the cars. At the same time Premo accepted and signed drafts in favor of Commercial for $13,456.49, the amount paid Newark by Commercial, and executed to Commercial certain trust receipts, under the terms of which it agreed to hold said cars in trust for Commercial and return them on demand, not to mortgage or encumber them, and to hold in trust, separate and apart from its own funds, the moneys received from any sale thereof, which moneys were to be delivered to Commercial on demand. Commercial's checks were given to the president of Premo, who delivered them to Newark. Newark then drew its own check to the order of the bank, delivered it to Premo, who took it to the bank and obtained the bills of lading drawn to the order of "Newark, notify Premo," which, with draft attached, had been sent to the bank by the manufacturers, and which Premo presented to the railroad company and obtained delivery of the automobiles and removed them to its salesrooms. No documentary transfer of title to the cars was ever made to Newark by the manufacturers or to Premo by Newark, except by the invoices and bills of lading, but Newark gave Commercial bills of sale as above mentioned. It is clear that at that time there was no title in Newark, as it had not then taken up the bills of lading from the bank.
In addition to the sum of $13,456.49 paid to Newark by *Page 15 
Commercial, Premo paid Newark $1,387.85 for balance of purchase price and extra items over and above the amount loaned to Premo. At the time of the appointment of the receiver Premo had paid to Commercial on account of its drafts $5,536.65. Because of default in the payment of the balance, Premo was notified by Commercial to pay or deliver the cars by December 6th, 1930, and the cars were taken by Commercial on December 27th, 1930, at which time Premo executed bills of sale to Commercial and Commercial then agreed with Premo to sell the cars, apply the proceeds to the amount due on Premo's acceptances, and remit the balance, if any, to Premo. None of the trust receipts were ever recorded by Commercial until January 30th, 1931, and after the receiver's demand for delivery of the cars, when six of them were recorded as conditional bills of sale. General claims filed with the receiver are in excess of $17,000 and he is without sufficient funds for their payment. The receiver contends that the trust receipts are, in effect, chattel mortgages, and, not having been recorded as required by the Chattel Mortgage act, are void as against the creditors represented by him in this action. This contention is denied by the defendant, who contends that as there are no judgment or other lien creditors, and as the receiver stands in the shoes of the insolvent company (Depew v. C.W.Depew Co., 98 N.J. Eq. 461), his rights rise no higher than those of the company and he cannot, therefore, attack defendant's title. Defendant also denies, arguendo, the jurisdiction of this court on the ground that petitioner has an adequate remedy at law; but this objection was not made until after the completion of the hearings before the master, and is of no avail now. Lehigh Zinc and Iron Co. v. Trotter, 43 N.J. Eq. 185,204; Coast Co. v. Mayor, c., of Spring Lake, 56 N.J. Eq. 615;Mertens v. Schlemme, 68 N.J. Eq. 544.
The master found that Premo had possession of the cars as agent or bailee of Commercial and that Commercial held legal title; that the trust receipts merely conferred upon Premo a power of sale with liability to account as trustee *Page 16 
for the proceeds; also, that conceding the trust receipts to be in fact chattel mortgages and void because not recorded, that objection could not be maintained by the receiver, but only by a subsequent purchaser or mortgagee without notice, or by a judgment creditor of Premo with execution levied and returned unsatisfied. To these findings the receiver has filed exceptions.
As to the right of the receiver to attack the validity of the trust receipts as against creditors of the insolvent company, I entertain no doubt, and exceptions to this portion of the master's report will be sustained. This question was settled more than forty years ago by a decision of this court in GrahamButtton Co. v. Spielmann, 50 N.J. Eq. 120; affirmed, sub nom.Spielman v. Knowles, Ibid. 796, where Vice-Chancellor Van Fleet expressly held "that the debts of creditors at large of an insolvent corporation are fastened on the property of the corporation by the adjudication of insolvency and the appointment of a receiver;" that a creditor, after having proved his claim, might maintain a suit to set aside a chattel mortgage, and that, as a receiver represents all creditors, he might also maintain such suit. That was an original bill by the receiver against a chattel mortgagee seeking a decree that the mortgage was void because of defects in the affidavit of consideration, and the mortgage was held void. See, also, Roe v. Meding, 53 N.J. Eq. 350; Wimpfheimer v. Perrine, 67 N.J. Eq. 597; Pryor v. Gray,70 N.J. Eq. 413; Fidelity Trust Co. v. Staten Island Clay Co.,70 N.J. Eq. 550, 558; Smith v. Hotel Ritz Co., 74 N.J. Eq. 296,616; W.D. Cashin Co. v. Alamac Hotel Co., Inc., 98 N.J. Eq. 432
(at p. 443). See, also, as to other statutory liens,Haston v. Castner, 31 N.J. Eq. 697 (decedent's debts);Brockhurst v. Cox, 71 N.J. Eq. 703; affirmed, 72 N.J. Eq. 950
(partnership receivership).
It is only those creditors whose debts have not been fastened
upon the property by statutory lien or legal process that must obtain judgment, execution and levy to give them a standing to attack a chattel mortgage. It was such a creditor who filed a bill in Muller v. Hubschman, 84 N.J. Eq. 30, *Page 17 
where the Bulk Sales act (P.L. 1914 p. 59), not the Chattel Mortgage act, was involved. Depew v. Depew Co., supra, and other cases relied upon by the defendant and the master, involved conditional sales agreements and not chattel mortgages, and they have no application here. The Conditional Sales act declares unrecorded sales agreements void as against creditors who have a lien by "attachment or levy;" the Chattel Mortgage act, as against "creditors of the mortgagor." While a creditor, to attack either a conditional sales agreement or a chattel mortgage, must have his claim fastened upon the property covered by the instrument attacked, in the one case it must be by the method specified in the statute; in the other, it may be by any method, judicial process, operation of law or by force of a statute. This distinction is not always made clear. In Seacoast Finance Corp.
v. Cornell, 104 N.J. Law 24, 26, Mr. Justice Parker, speaking for the court of errors and appeals, said: "It is familiar law that a chattel mortgage, invalid as against creditors for want of the statutory affidavit and proper record, is valid as between the parties to it," a statement which, as applied to receivers of insolvent corporations, is often misunderstood. It is perfectly true that such a receiver, acting only in the right of the corporation, could not avoid such a mortgage; but where he is acting for and in the right of creditors protected by the Chattel Mortgage act, he stands in their shoes and not those of the corporation; hence, wherever the creditors could themselves challenge the mortgage, a receiver can do so for them. But his rights are limited by those of the creditors as is seen from the decisions involving conditional sales agreements.
As to the receiver's contention that the trustee receipts are, in effect, chattel mortgages, it would seem that since the decision of this court in Karkuff v. Mutual Security Co., affirmed by the court of errors and appeals in 108 N.J. Eq. 128,
the matter was not open to question and that they should be held to be chattel mortgages and void because not recorded as required by the Chattel Mortgage act. See, also, CommonwealthFinance Corp. v. Schutt (Court of Errors and Appeals),97 N.J. Law 225; First National Bank of Ocean *Page 18 City v. Eastern Motor Co. (Court of Errors and Appeals),109 N.J. Law 327; Unger v. Hochman, 4 N.J. Mis. R. 445;General Contract Purchase Corp. v. Bickert, 10 N.J. Mis. R.958.
In the Karkuff Case and also in First National Bank of OceanCity v. Eastern Motor Co., as in most of the other cases involving similar questions, the rights of a subsequent purchaser or mortgagee were involved; but creditors whose liens have been fastened upon the property are as fully protected as are subsequent purchasers and mortgagees. 1 Comp. Stat. p. 463 §4. The claims of creditors of Premo having been fastened upon the property of the insolvent company (Graham Button Co. v.Spielmann, supra), the decisions in the cases cited are deemed to be entirely controlling here. The defendant relies mainly uponCumberland Trust Co. v. B.S. Ayars Sons Co., 83 N.J. Eq. 479; affirmed, 85 N.J. Eq. 177; and upon numerous cases in the federal courts and other jurisdictions in support of its contention that the trust receipts are not to be construed as chattel mortgages, but that they are a separate and distinct form of chattel security requiring no recording. Most, if not all, of the federal cases cited are those originating in jurisdictions other than New Jersey in which the chattel mortgage is not a favored form of security, or is governed by statutory provisions different from ours. The case of Cumberland Trust Co. v. B.S.Ayars Sons Co., supra, is clearly distinguishable from theKarkuff and kindred cases, and, in my judgment, is not applicable to the present controversy. It involved not the financing by an intermediary bank or finance company of the purchase of chattels, the relation of lender and borrower, nor, indeed, the relation of vendor and vendee. The court of errors and appeals did not define the relationship of the parties to the contract there under review, merely holding that there was nothing illegal about the contract which "represented the serious and deliberate act of the parties." I think it is plain that the relationship there was one of principal and factor, or, as the court suggested, a del credere commission, and the decision is readily explainable by the common law rule applicable *Page 19 
to principal and factor. 25 C.J. 351. Title to the chattels involved never left the principal until it vested in the vendee of his agent. The master in the instant case has based his findings upon the assumed fact that Premo never had any title to the goods in question and that Commercial obtained its title, not from Premo, but from Newark by means of so-called bills of sale; but it is not material what form the transaction took. Premo was undoubtedly the purchaser. Newark was not, neither was Commercial. It is not shown that Newark ever obtained title, unless by the bills of lading, and if not could transfer none except by taking up those bills; but even if it did have title, that title was held for Premo pending payment of the purchase price, and Newark acted as Premo's agent in transferring the title to Commercial, as security only. That title was defeasible and the property was subject to redemption by Premo, not by Newark. Commercial was not in the business of buying and selling automobiles. Its business was the loaning of money on security. "Whenever a transaction resolves itself into a security for a debt it is a mortgage." Wilmerding, Hoguet Co. v. Mitchell,42 N.J. Law 476. If it be contended that a formal bill of sale was necessary to transfer title to the automobiles, Commercial is not helped thereby. If that is so, a formal bill of sale to Newark was as necessary as one to Commercial or Premo.
But equity disregards the form of a transaction and looks to its substance, and will not be deceived or misdirected by methods employed to circumvent the law. Rapoport v. Rapoport ExpressCo., 90 N.J. Eq. 519; Unger v. Hochman, supra. In KeystoneFinance Co. v. Krueger, 17 Fed. Rep. 2d 904, Judge Davis said:
"The test does not depend upon the name which the written instrument bears, but upon the nature of the transaction and the intention of the parties. * * * A written instrument may in terms convey title to a chattel; but if by oral agreement it is security for the payment of money and the chattel may be redeemed on the payment, the instrument is a chattel mortgage." *Page 20 
There is no doubt in my mind but that the use of the trust receipts in this case was for the sole purpose of evading the law requiring the recording of chattel mortgages. Mr. Carl T. Frederick, of the New York bar, writing for the Columbia Law Review of May and June, 1922, says that the trust receipt is an anomaly in the law, a by-product; that it does not rest in statute but is the result of the recording acts. "If there were no recording acts relating to chattel mortgages there never would have been any occasion or reason for the development of trust receipts." In other words, if there were no law, there would be no necessity for evasion. I have read Mr. Frederick's excellent article with a great deal of interest, and while it bears the marks of great industry and research, neither it nor any of the cases cited by him can be considered as authority binding on this court. However, it is interesting to note that in his final analysis Mr. Frederick says that the trust receipts is no more and no less than a chattel mortgage, but that it is of a peculiar "type" which requires no recording to make it valid. In his third conclusion he says:
"In the proper trust receipt situation, the creditor, generally a bank or banker, has legal title to the property for the purpose of security. This creditor is a mortgagee and the arrangement is a chattel mortgage, but of a peculiar type, distinguishable from the usual chattel mortgage by reason of the fact that the obligor has not prior to the arrangement had either title to or possession of the property mortgaged."
But our law recognizes no "peculiar type" of chattel mortgage; it expressly applies to "every mortgage or conveyance intended to operate as a mortgage;" that is, as "security for a debt."Wilmerding, Hoguet Co. v. Mitchell, supra.
Trust receipts are undoubtedly common law chattel mortgages, secret liens proscribed by statute; but as was well said by Vice-Chancellor Lane in Rapoport v. Rapoport Express Co.,supra: "This court will not countenance any such evasion of the statute. To hold that the paper evidences such a contract as it purports to evidence would be to permit a fraud upon the statute and it might as well be repealed." *Page 21 
It is true that in that case Vice-Chancellor Lane had under consideration what purported to be a lease, but his remarks are equally applicable to the trust receipt here involved.
In the case of In re Schuttig, 1 Fed. Rep. 2d 443, Judge Bodine of the United States district court for the district of New Jersey had occasion to pass upon a trust receipt substantially the same as the one in the case at bar. The transaction for financing the purchase there was similar to that involved here, and I can see no substantial difference in the facts of that and the instant case, or of the other New Jersey cases holding trust receipts in effect chattel mortgages, except that here there was an attempt by Newark to transfer title to the cars direct to Commercial, instead of to Premo. True, this, according to Mr. Frederick, and some of the authorities cited by him, is the distinguishing feature between the trust receipt and the ordinary chattel mortgage; but in my judgment it is a distinction without a difference in so far as it might be claimed to change the nature of the transaction. Our state policy is dictated by the legislature and not by the courts, and the legislature has said that "every mortgage or conveyance intendedto operate as a mortgage of goods and chattels * * * which shall not be accompanied by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor," c., unless recorded. 1Comp. Stat. p. 463 § 4. The transaction here under review "resolves itself into a security for a debt" (Wilmerding, Hoguet Co. v. Mitchell, supra), and it must have been intended, in legal effect, to operate as a mortgage as the parties are presumed to have intended the legal consequence of their deliberate acts. Conceding, therefore, that the trust receipt is "a peculiar type" of chattel mortgage, it nevertheless comes well within the express terms of our Chattel Mortgage act. The "intolerable burden and expense," the inconvenience and trouble of complying with the recording requirements of the chattel mortgage acts are advanced by Mr. Fredericks as an excuse for excepting trust receipts from their provisions. But it seems to me that his reasoning is entirely *Page 22 
fallacious as applied to our law. Had the legislature intended to make any exceptions in the application of our Chattel Mortgage act it is to be assumed it would have done so in plain language; but there are none in the act. The object of that act was to give publicity to all liens upon personal property and "sweep awaysecret arrangements" of whatever kind, by which creditors were embarrassed and defeated. Roe v. Meding, 53 N.J. Eq. 350,367. This policy of the law the court cannot ignore. See, also,Dirigo Tool Co. v. Woodruff (Court of Errors and Appeals),41 N.J. Eq. 336, 342, and Mill Factors Corp. v. GuardianTrust Co. (Court of Errors and Appeals), 107 N.J. Law 529.
With respect to Century Throwing Co. v. Muller,197 Fed. Rep. 252, and In re E. Reboulin Fils, 165 Fed. Rep. 245, cited by Mr. Frederick in support of his contention that the trust receipt is valid in New Jersey, it may be said that if they do support that contention, those decisions are not binding upon this court, as "in the construction of state statutes, it is the province of our courts to lead, not to follow, those of federal or other foreign jurisdictions." First National Bank ofLyndhurst v. Bianchi Smith, Inc., 106 N.J. Eq. 333. But those cases are clearly distinguishable from the case at bar, in that the bills of lading there involved were to the order of the lender and under the Uniform Bills of Lading act (1 Cum. Supp.Comp. Stat. p. 140) title vested in the lender upon its taking up those bills by payment of the drafts attached. And inKeystone Finance Corp. v. Krueger, supra, the trust receipt involved had spent itself; only the rights under a bill of sale remained to be determined, and Judge Davis' clear and concise statement of the law of this state respecting chattel securities is, I believe, entirely correct. The decision supports the receiver's claim in the case at bar.
Also, it seems to me that Commercial is estopped to deny, at least as against the claims protected by the Chattel Mortgage act, that the title to the automobiles in question was in Premo. It had possession, which is prima facie title (Dirigo ToolCo. v. Woodruff, supra), by consent of Commercial; and *Page 23 
when Premo sold any of the cars, Premo, and not Commercial, executed a bill of sale in its own name to the purchaser, and this was with the knowledge of Commercial. Persons dealing with Premo assumed and were entitled to assume that it had title as well as possession, there being of record nothing to indicate to the contrary. It was to guard against just the situation here presented that the chattel mortgage and conditional sales laws were enacted by our legislature. In Fidelity Trust Co. v.Staten Island Clay Co., 70 N.J. Eq. 558, Vice-Chancellor Bergen said:
"The purpose of the act (is) to protect persons in extending credit to one having visible possession and ownership of chattels, unless the mortgagee saw fit to make public, in the manner required by law, his claim against such goods."
The iniquity of the secret lien lies, not in actual ownership without notice of the lien, but in apparent ownership resulting from possession, a strong indicia of ownership. A secret transfer of title from a vendor to the lender is no less secret than such a transfer from a vendee who has obtained title from the vendor. Both transfers are as security and for the same debt, viz., the loan to the vendee, who is obligated to repay — never, in cases of this class, for a loan to the vendor. After the conveyance the vendee has the equity of redemption, not the vendor whose interest has been terminated by the payment of the purchase pricein full.
The master also found that the filing of the original petition by the receiver against the defendant was not permissible and that his suit should have been by bill, citing Receiver of StateBank v. First National Bank of Plainfield, 34 N.J. Eq. 450. It was undoubtedly so held in that case; but that was in 1881, over fifty years ago, when matters of form were more important than now. Formality in procedure, especially in this court, while it should be observed for the sake of orderliness and uniformity, is not so important to-day as when the cited case was decided. In a court of conscience, it is only necessary that a suitor present his grievance or cause of action in understandable language and form; and unless the mistake in form is intentional or *Page 24 
otherwise inexcusable, the court will not close its portals in the suitor's face, but will by necessary amendment shape the pleadings to fit the cause of action, whatever it may be; and where a controversy which should have been begun by bill is brought by petition and is completely heard without objection as to form by either side, objection to form at the time of argument on the merits will not be heard, but the defects in form will be considered as waived. However, there is express statutory authority for amendment of the present proceedings, if amendment is necessary. Section 5 of the Chancery act of 1915 (1 Cum.Supp. Comp. Stat. p. 271) provides that "no suit or proceeding shall be dismissed on the ground that it was erroneously begun by bill instead of by petition, or by petition instead of by bill; but in such case the court may order proper amendments to be made upon terms." In the instant case, it would probably have been more appropriate had the receiver entitled his petition in the cause in which he was appointed receiver, but as no objection to the original proceeding by the receiver against the defendant was made until after the matter had been fully heard, the objection is considered without force now.
The affairs of the insolvent company are being administered in this court and the present proceeding is considered as a step in that cause. The pleadings will be amended accordingly. So considered, all objections based upon lack of formalities are of no avail.
All exceptions to the master's report are sustained and I will advise a decree in accordance with these conclusions, which, in effect, I believe, confirm the prediction of John Hanna, Professor of Law at Columbia University, as contained in his article on Trust Receipts in the January, 1933, number of TheMercer Beasley Law Review. *Page 25