The F.M. Lupton Publishers, Incorporated, a New Jersey corporation, publishers of the magazine People's Home Journal, with headquarters in New York City where it carried on business, gave a chattel mortgage on its establishment in that city to the West Virginia Pulp and Paper Company for $125,000, May 24th, 1927. In April, 1928, the Lupton company transferred the chattels to Periodical Press and that corporation, in January, 1929, transferred them to People's Home Journal, Incorporated. The mortgagee had contemporary notice of the transfers. The latter companies, New Jersey corporations, were creations of the Lupton company, organized to carry on the publication and principally, it is said, for stock promotion. In the latter part of 1929, the attorney-general prosecuted them and their promoters under our Securities act (Blue Sky law) and caused them to be enjoined. On December 10th, 1929, a receiver was appointed under the act, who took possession of the mortgaged chattels in New York, except a press, sold them and now holds the proceeds. A week before, December 3d, the mortgagee sold the press for $15,000, crediting the amount on the mortgage debt. The receiver contends that the chattel mortgage is void as against creditors of People's Home Journal, Incorporated, for failure to file as required by the statutes of New York and he seeks a determination as to the right to the fund in his hands derived from the sale of the chattels, and, also, whether the mortgagee must respond to him for the $15,000, the proceeds of the press taken by it after the People's Home Journal, Incorporated, became insolvent, in violation of section 64 of our Corporation act.
The New York laws control the issues. Its statutes declare chattel mortgages absolutely void as against creditors of the mortgagor and as against subsequent purchasers and *Page 518 
mortgagees in good faith unless it or a copy is filed and the filing renewed annually, within thirty days of the anniversary. A copy was not filed in 1929 and the mortgage, admittedly, would have been void as to the creditors of the Lupton company had it retained ownership, and it is the receiver's insistment that the failure to file rendered the mortgage invalid as well as against creditors of subsequent purchasers, in this instance, creditors of the People's Home Journal, Incorporated.
The point was decided by Vice-Chancellor Bergen in FidelityTrust Co. v. Staten Island Clay Co., 70 N.J. Eq. 558, holding that an unrecorded mortgage was invalid as against creditors of a purchaser from the mortgagor, and the decision met with the approval of the United States circuit court of appeals in New York in In re Rambler Cafeteria, 9 Fed. Rep. 2d 861.
The Fidelity Trust Company Case first came before the vice-chancellor on a bill to foreclose the unrecorded chattel mortgage (70 N.J. Eq. 550) and he there held the mortgage to be good as between the mortgagee and the receiver representing the insolvent company which had purchased the chattels subject to the mortgage and with notice; the receiver had not set up that there were creditors and that he defended in their behalf. Thereupon the receiver moved to amend his answer in that respect and in granting leave the vice-chancellor decided the fundamental question upon which the merits of the motion rested. The decision is the law of this court; it is as inherently sound as its logic is appealing. Observing that at common law a mortgage on chattels left in the possession of the mortgagor was prima facie
fraudulent as to creditors, mortgagees and purchasers without notice, the presumption being rebuttable by proof of the bonafides of transaction, and commenting that in the absence of our recording act the mortgage would be void as against creditors of subsequent owners who obtained a lien on the chattels unless the non-transfer of possession was satisfactorily explained and that neglect was prima facie fraudulent (pure neglect is fatal), the vice-chancellor squarely meets the contention, *Page 519 
that since the statute makes an unrecorded chattel mortgage void as to creditors of the mortgagor only, the common law badge of fraud, arising out of failure to take possession, no longer prevails as to creditors of subsequent owners of the chattels, with this answer: "To read the act in the restricted sense now contended for would aid in the perpetration of the very fraud which at common law was so strongly condemned, for the mortgagee with his secret claim could stand by and permit the original mortgagor to dispose of the chattels in bulk, subject to his mortgage, and thus allow the purchaser to deal with his creditors as the owner of unencumbered property. As the mortgagee with knowledge of the transfer by the mortgagor to a third party, as is the case here, could reduce the goods to its possession, it has, in my opinion, no greater protection for its unrecorded mortgage against the creditors of the purchaser than it would have had against the creditors of the mortgagor, and having permitted a new owner to retain the possession of the goods, that owner becomes, within the meaning of the statute, a mortgagor." To the corollary claim, in effect, that the common law presumption of fraud as to creditors of owners of the chattels is abrogated by the statute limiting the invalidity of unrecorded mortgages to creditors of the mortgagor, the vice-chancellor, after finding the statute a super-added condemnation of unrecorded mortgagees and restating the proposition: "In other words, a chattel mortgage, unaccompanied by change of possession of the property, is, because of the act, a stronger security than it was before, and that no fraud can be imputed for want of record in such cases, so that instead of being prima facie
fraudulent, it is good against everyone, other than the limited class named in the statute," he says, "this reasoning does not convince me as being sound, for I think the words and plain intent of the act are against such construction, and that it makes all such mortgages void as against the creditors of any owner holding the property subject to such unrecorded mortgage with the knowledge and consent of the mortgagee. When conditions change, and innocent parties may suffer, it becomes the duty of the mortgagee *Page 520 
to warn them by taking possession, if he desires to obtain priority of lien." The ruling is, in fine, that chattel mortgages which, for failure to take possession, were at common law deemedprima facie fraudulent as against creditors of owners are now condemned by the statute as absolutely void unless filed or recorded, if possession is not taken, i.e., the statutory filing or recording alone gives them validity as against creditors. No New York authority has been cited holding a contrary doctrine.
That a receiver of an insolvent corporation represents the unsecured creditors of the corporation and may attack securities fraudulent as to them, is settled in Graham Button Co. v.Spielmann, 50 N.J. Eq. 120.
The receiver herein was appointed under the Securities act which, upon a conviction of an offense against that act, authorizes chancery to restrain a corporation from exercising its franchises and privileges and to appoint a receiver, in whom is vested all the property, real and personal of the corporation, and who shall settle the estate and distribute the assets and have all the powers and duties conferred upon receivers by the Corporation act; Laws 1930, chapter 51. One section of the act authorizes the appointment of a receiver of property derived by the corporation by means of the illegal practices forbidden by the act and of all commingled property not identifiable in kind, and to distribute the proceeds among those defrauded. Another comprehends the winding up of the corporation and the distribution of its assets; the result of the ill-gotten gains to the victims, the rest to the victims and the creditors. The act simply provides an additional cause to those prescribed by the Corporation act for the winding up of the affairs of corporations, applicable only to such corporations as offend against the Securities act, and the receiver, like under that act, represents general creditors and may act in their behalf.
The receiver is advised that the mortgage is not a valid lien upon the proceeds of the chattels sold by him and that they are distributable among creditors. Some creditors subordinated their claims to the mortgage debt; their dividends *Page 521 
will go to the mortgagee. The receiver will take the precaution of giving them notice so they may be heard in protest if they care to dispute their postponements.
In view of the holding that the chattel mortgage is void as to creditors, it is the receiver's duty to seek a recovery of the proceeds of the press sold by the mortgagee and appropriated by it, as a preference under our statutes. The disputed claim to the proceeds cannot be adjudged upon the receiver's request for instructions, although the merits have been tried out, argued and submitted. Recovery can only be had by plenary action unless the mortgagee will answer the petition and consent to a personal decree if the issue be found against it. That it has not done. So far, it was only resisted findings preliminary to direction to the receiver to sue. In this posture it would be inappropriate to express an opinion upon the merits of its defense, that it was a purchaser for value of the press and not possessor of it under the mortgage. Whether, if it can maintain that position as well as sustain the claim that the transaction is not within the inhibitions of our statute, ought, in due regard to its rights, be left to the tribunal having jurisdiction.
If the mortgagee concludes to submit itself to this jurisdiction it will apprise the court within ten days. *Page 522